Submitted on record and briefs December 5, 2007; resubmitted en banc February 6, reversed and remanded for resentencing; otherwise affirmed March 19, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROBERT LEE BANKS,
*Defendant-Appellant.*

Washington County Circuit Court
C030755CR; A123839

180 P3d 726

Andrew S. Chilton and Chilton, Ebbett & Rohr, LLC, filed the brief for appellant.

Robert L. Banks filed the supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Benjamin R. Hartman, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

HASELTON, J.

Edmonds, J., dissenting.

**HASELTON, J.**

Defendant appeals, challenging his convictions following a jury trial for first-degree robbery, ORS 164.415, first-degree burglary, ORS 164.225, second-degree theft, ORS 164.045, and menacing, ORS 163.190. We reject those challenges without discussion. We also reject without discussion defendant's argument that ORS 137.700 is facially unconstitutional. We write only to address defendant's unpreserved challenge that the trial court erred in imposing a 60-month consecutive sentence on his conviction for first-degree burglary, in violation of the rule announced in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). For the reasons that follow, we affirmatively exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991), to address and correct that asserted error. *See also State v. Fults*, 343 Or 515, 173 P3d 822 (2007); *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007) (both addressing proper application of considerations bearing on positive exercise of *Ailes* discretion). Accordingly, we reverse and remand for resentencing, but otherwise affirm.

The pertinent circumstances are undisputed. Defendant accosted his former girlfriend as she got out of the car at her home and forced her, over her objections, to let him inside. Once inside, defendant refused to leave, prevented the victim from leaving, and then, taking a knife from a kitchen drawer, threatened her and demanded money, which she gave him. The indictment alleged, *inter alia*, that defendant had committed first-degree burglary by unlawfully entering and remaining in the house with the intent to commit a crime therein, and first-degree robbery by threatening the victim with a knife so as to overcome her resistance while committing a theft. The jury convicted defendant of those crimes, as well as second-degree theft and menacing, but acquitted defendant of unlawful use of a weapon.

On December 19, 2003—roughly six months before the United States Supreme Court decided *Blakely*—the trial court imposed sentence in this case. In particular, the court imposed a sentence of 90 months on the first-degree robbery

conviction and, pursuant to ORS 137.123, a consecutive sentence of 60 months on the first-degree burglary conviction.[1] The trial court explained the imposition of the consecutive sentence as follows:

> "[O]n the burglary charge, you're in Grid Block 9C, and in that grid block you end up with a 60-month commitment to the Department of Corrections. And because it's separate conduct that you went back to this location clearly with the intent to steal property or cause harm to [the victim], I'm going to make those 60 months consecutive to the 90 months and you'll serve that after you finish the 90 months on the robbery."

From those comments, it is unclear whether the trial court was purporting to rely on ORS 137.123(2) or on ORS 137.123(5) in imposing the consecutive sentence. Defendant did not raise any constitutional objection to the court's imposition of a consecutive sentence.

Defendant contends that, although he did not raise his present challenge in the trial court, the court's imposition of a consecutive sentence is, nevertheless, reviewable as "error of law apparent on the face of the record." ORAP 5.45(1). The state's sole response is to invoke *State v. Fuerte-Coria*, 196 Or App 170, 173, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005) (unpreserved *Blakely*-based challenge to imposition of consecutive sentences was not reviewable as "plain error" because "the legal point is *not* obvious; indeed[,] it *is* reasonably in dispute" (emphases in original; internal quotation marks omitted)).

In *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___ , 128 S Ct 1657 (2008), the Oregon Supreme Court held that *Blakely* applies to determinations made pursuant to ORS 137.123 as to whether consecutive sentences should be imposed. Accordingly, because asserted "plain error" is determined by reference to "the law existing at the time the appeal is decided, and not as of the time of trial," *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002),

---

[1] The court also imposed sentences of six months each on defendant's convictions for second-degree theft and menacing, with those sentences to be served concurrently to each other and to the sentences imposed for robbery and burglary.

*rev den*, 335 Or 504 (2003), the claim of error satisfies the requisites of error apparent on the face of the record, as prescribed in *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

■    The question remains whether we should affirmatively exercise our discretion to consider and correct that error. *See, e.g., Jury*, 185 Or App at 138 (reiterating that, under *Ailes*, the determination of whether a claim of error satisfies the requirements of "plain error" is merely the first step in a "two-step process"). Factors that bear on our exercise of discretion include the following:

> "[T]he competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6.

In *Ramirez*, 343 Or at 513-14, the court further indicated that, in assessing the "competing interests of the parties," a defendant's interest in resentencing is minimal if "there is no legitimate debate" about whether a departure sentence is warranted. Similarly, the court concluded that "the ends of justice" would not be advanced when "the evidence on a sentencing factor is overwhelming." *Id.* In *Fults*, 343 Or at 523, the court listed several additional considerations, including whether there was a "possibility that [a] defendant made a strategic choice not to object to [a] sentence" and "the interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings."

Consistently with *Ailes*, as amplified by *Ramirez* and *Fults*, we affirmatively exercise our discretion to consider and correct the trial court's error in imposing the consecutive sentence for the following reasons: First, given the timing in this case, it is highly unlikely that defendant made a "strategic choice" to forgo his present objection to the consecutive sentence. *Accord Fults*, 343 Or at 523 (noting that the "possibility that defendant made a strategic choice not to

object to the sentence" militates against exercise of *Ailes* discretion). That is so because defendant was sentenced in December 2003—six months before *Blakely*, the predicate for such an objection, issued. Thus, the circumstances pertaining to possible "strategic waiver" here differ qualitatively from those in cases arising in the post-*Blakely*/pre-*Ice* "window" in which criminal defendants began with increasing frequency to raise constitutional challenges to judicial factfinding in imposing consecutive sentences pursuant to ORS 137.123. *See, e.g., State v. Tanner*, 210 Or App 70, 150 P3d 31 (2006), *vac'd and rem'd*, 343 Or 554, 173 P3d 831 (2007) (remanded, along with six other cases, for resentencing in light of *Ice*).

Second, considering and correcting the asserted error here will not subvert the judicial system's "interest in requiring preservation of error." *Fults*, 343 Or at 523. That is so because (again) defendant was sentenced in December 2003, before *Blakely* issued—and, given the state of the law at that time, we have little doubt that, if defendant had, with remarkable prescience, raised an *Ice*-like challenge to the consecutive sentence, the trial court would have flatly rejected such a challenge. Thus, giving the sentencing court an "opportunity to correct any error," *Ailes*, 312 Or at 382 n 6, would not have yielded a different result, obviating the need for appellate review.

Third, as to the "gravity of the error," *id.*, the consecutive sentence is 60 months in length, which is very substantial.

Fourth, the circumstances here are unlike those in *Ramirez* or *Fults*, where the procedural posture and evidence were such that it was highly unlikely that a remand would make any practical difference—and, thus, a remand would merely result in "unnecessary repetitive sentencing proceedings." *Fults*, 343 Or at 523. Specifically, unlike in *Ramirez*, 343 Or at 513, given the totality of the evidence—and, particularly, the circumstantial intertwining of the burglary and the robbery—there is a "legitimate debate" here as to whether a jury would render the findings required under ORS 137.123(2) or ORS 137.123(5) to support the imposition of a consecutive sentence. *See Ramirez*, 343 Or at 513 ("On this record, no reasonable factfinder (whether a judge or a

jury) could conclude anything other than that the victim suffered a permanent injury."). Further, unlike in *Fults*, 343 Or at 523, the enhanced (consecutive) sentence imposed here was not imposed concurrently with another sentence that was not challenged on appeal. Consequently, a remand is consonant with "the ends of justice" in this case. *Ailes*, 312 Or at 382 n 6.

Finally, we respectfully, albeit briefly, reject the dissent's reasoning to the contrary. Three aspects of the dissent warrant specific response.

First, contrary to the dissent's suggestion, it is "apparent on this record what, if any, additional facts are left to be found by the jury." 218 Or App at 606 (Edmonds, J., dissenting). That is so regardless of the purported grounds for imposition of consecutive sentences. Specifically, the determination of whether, given the totality of the circumstances, multiple offenses "arise from the same continuous and uninterrupted course of conduct," ORS 137.123(2), or whether the defendant acted with the requisite "willingness to commit more than one criminal offense," ORS 137.123(5)(a), or whether there was the requisite "risk of causing greater or qualitatively different loss, injury or harm," ORS 137.123(5)(b), is a matter of *fact* committed to the trier of fact. That is *Ice*'s fundamental, irreducible premise. *See Ice*, 343 Or at 252-53, 264-67.

Second, in a related sense—and contrary to the dissent's apparent assumption, 218 Or App at 606 (Edmonds, J., dissenting)—the fact that the jury rejected defendant's "all-or-nothing" defense with respect to guilt would not logically, much less necessarily, compel a determination that the commission of multiple crimes here satisfied the requisites for imposition of consecutive sentences in accordance with ORS 137.123(2) or ORS 137.123(5)(a) or (b). Commission of multiple crimes is a necessary, but insufficient, factual condition for the imposition of consecutive sentences.

Finally, the dissent suggests that defendant has not made a sufficient showing under *Fults* or *Ramirez* of "how he

suffered an injustice" as a result of the trial court's error. 218 Or App at 607 (Edmonds, J., dissenting). We acknowledge that "injustice" is a regrettably amorphous term, even—or, perhaps, especially—for those who strive to dispense justice. And, to be sure, we will be wrestling with the implications of *Fults* and *Ramirez* in months and years to come.[2] *Fults* and *Ramirez* prescribe a high barrier, but not one that is insurmountable. In this case, for the reasons previously described, *see* 218 Or App at 597-99, there is a sufficient substantial prospect of injustice if we do not correct the error to warrant the exercise of *Ailes* discretion.

Reversed and remanded for resentencing; otherwise affirmed.

**EDMONDS, J.,** dissenting.

Once again, the court is required to confront the provisions of ORAP 5.45(1) and determine whether the error claimed for the first time on appeal is error apparent on the face of the record, and, if it is, whether this court should exercise its discretion to correct it. The majority concludes that the initial criteria under the rule are satisfied and proceeds to exercise its discretion to remand for resentencing. I disagree with the majority's decision for the reasons that follow.

The majority's decision perpetuates this court's jurisprudence in *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), in response to the holdings in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007) *cert granted,* \_\_\_ US \_\_\_ , 128 S Ct 1657 (2008). In *Apprendi*, the Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum sentence must be submitted to a jury and proved beyond a reasonable doubt. 530 US at 490. In *Blakely*, the Court held that, for purposes of the Sixth Amendment, the statutory maximum sentence that a judge may lawfully impose must be based on the facts reflected in the jury verdict or admitted by the defendant. 542 US at 303.

---

[2] *See, e.g., State v. Cone*, 218 Or App 273, 179 P3d 688 (2008); *State v. Smith*, 218 Or App 278, 179 P3d 691 (2008).

In *Ice* (unlike in this case), the defendant objected at the time of sentencing to the imposition of consecutive sentences based on the court's factual findings. The trial court overruled the defendant's objection and imposed consecutive sentences based on its own findings under ORS 137.123(5). Our Supreme Court ruled that the imposition of consecutive sentences under ORS 137.123(5) implicated the principles expressed in *Apprendi* and *Blakely*, because the statute required specific factual findings to be made as to whether the offenses arose out of the same continuous and uninterrupted course of conduct; otherwise, the defendant's sentences were required to be imposed concurrently rather than consecutively. In the court's view, the consecutive sentences violated the defendant's Sixth Amendment rights because the necessary findings were made by the trial court rather than by a jury.

Here, defendant was sentenced in January 2004, after *Apprendi* was decided, but before *Blakely* and *Ice*. Defendant did not object at the time of sentencing to his consecutive sentences on the ground that he was entitled to have a jury determine the factors required for the imposition of consecutive sentences. Were it not for our decision in *Jury*, defendant's arguments would fail under ORAP 5.45(1) because, as we held in *State v. Fuerte-Coria*, 196 Or App 170, 173, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005), an unpreserved Sixth Amendment challenge to the imposition of consecutive sentences was not "obvious" error at the time that defendant was sentenced. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (error apparent on the face of the record must be "obvious and not reasonably in dispute"). Any error in imposing consecutive sentences based on judicial factfinding became "obvious" only after *Ice* was decided in 2007.

In *Jury*, however, we addressed whether "error apparent on the face of the record" should be determined by reference to the law as of the time of the appeal or the law as of the time of trial. We noted that the question had never been explicitly addressed by Oregon appellate courts; we further observed that determining plain error based on the law as of the time of the appeal could operate to subvert principles of preservation of error and comity with trial courts.

185 Or App at 138. Morever, we explained that such an approach could lead to incongruous results in which a trial court could be reversed for "plain error" when its ruling comported with or was even compelled by the law as it existed at the time that the court ruled. *Id.* at 136-37. Nevertheless, we concluded that, by applying the two-step process for plain error review, we could "ensure that review of plain error will be the exception, and not the rule" and that the principles of preservation would be bypassed "only in extraordinary circumstances." *Id.* at 138-39. The majority's decision in this case departs from that pledge and brings new and inconsistent meaning to our exercise of plain error review.

A comparison between the record in this case and the record in *Jury* illustrates why this case does not present the "extraordinary circumstances" that constitute "the exception to the rule" with regard to the exercise of our discretion under ORAP 5.45(1). On the record before us in *Jury*, it was apparent that an obvious injustice had occurred. The defendant appealed from controlled substance-related convictions. During the defendant's trial in 1994, the trial court admitted evidence that the police had obtained through the use of a body wire that they had placed on an informant. Under the case law as it existed at the time of trial, the police were not required to obtain a court order authorizing them to use a body wire. In his opening brief on appeal, the defendant argued for the first time that our case law to that effect was wrongly decided and that a court order was in fact required by the statute. We held the defendant's appeal in abeyance pending a decision by the Supreme Court in other cases involving the same issue.

In 2000, the Supreme Court held, as the defendant in *Jury* contended, that ORS 133.724 required the police to obtain a court order before using body wires to intercept communications. *State v. Fleetwood*, 331 Or 511, 515, 16 P3d 503 (2000); *State v. Cleveland*, 331 Or 531, 534, 16 P3d 514 (2000). After those cases were decided, the state filed its brief in *Jury*, arguing that the defendant had failed to preserve the error at trial and that the error was not error apparent on the face of the record. After determining that the error was now apparent on the face of the record in light of the Supreme Court's rulings in the other cases, we turned to whether we

should exercise our discretion to remedy the error. Relying on a nonexclusive list of criteria in *Ailes* that guided our discretion, 312 Or at 382 n 6,[1] we elected to exercise our discretion to correct the error in *Jury* because of a unique circumstance: Had the objection to the admission of the body wire evidence been raised in the trial court in 1994, it would have been properly rejected under existing case law precedent. Thus, the outcome at trial would not have been altered, even had the issue been preserved. In that light, the ends of justice were served by treating all similarly situated defendants identically, whether or not the objections had been preserved. 185 Or App at 140.

This case presents different circumstances from those that existed in *Jury*. Here, the record does not demonstrate—and defendant does not explain—how any injustice occurred. In fact, he does not even explain (1) what provision of ORS 137.123 is or is not applicable to the circumstances that led to his convictions; or (2) what facts remain to be decided by a jury. In light of those deficiencies in the record and defendant's argument on appeal, I would decline to exercise our discretion to correct any error that may have occurred with respect to the imposition of consecutive sentences. The basis for that decision is explained more fully below.

Defendant was charged with first-degree robbery, first-degree burglary, first-degree unlawful use of a weapon, second-degree theft, and menacing; all of the crimes were alleged to have been committed on March 1, 2003. In Count 1, defendant was charged with committing robbery by, "in the course of committing theft of property[,] * * * threaten[ing] the immediate use of physical force on [the victim] and

---

[1] Specifically, the court instructed that,

"[I]n future applications of this rule [ORAP 5.45(1)], in deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct the error."

(Citations omitted.)

[using] a dangerous weapon, to-wit: a knife, with the intent of preventing and overcoming resistance to the taking of the property." Count 2 of the indictment alleged that defendant committed the crime of burglary by "unlawfully and knowingly enter[ing] and remain[ing] in a building that was a dwelling * * * with the intent to commit the crime of theft therein."

Trial on the charges occurred in November 2003. By that time, *Apprendi* had been decided. At trial, the state offered evidence that, as the victim was walking from her car across a parking lot towards her apartment, defendant approached her and took her by the arm. She informed defendant that he was not supposed to have any contact with her but, nonetheless, he led her to her apartment and required her to let him inside her residence. Once inside, the victim told defendant to leave, but he refused. The victim attempted to call 9-1-1, but defendant unplugged the phone. The victim tried to flee through the front door, but he blocked her way and made her sit down. Defendant then went into the kitchen and retrieved a knife. He again approached the victim, standing over her with the knife and a pillow, and demanded money. The victim refused his request, but defendant told her that he would use the knife on her if she did not comply. The victim then dumped the contents of her purse onto the coffee table. Defendant instructed her to take the money out of her wallet, which he then stole. Defendant then required the victim to drive him to downtown Portland, where he and the victim parted company.

In response to the state's evidence, defendant testified that he had no contact with the victim on March 1, 2003, and that all the events that the victim testified about, including threatening her with a knife and demanding money, did not occur. Thus, the issue before the jury was whether the victim had fabricated the events of March 1, 2003. The jury found defendant guilty of all charges, except the charge of unlawful use of a weapon.

Before sentencing on the convictions, defense counsel told the trial court, "We have the one incident regarding [the victim], we don't have multiple incidences in time[,] and

we don't have multiple victims here." During its pronouncement of sentence on Count 2, the trial court stated,

> "And then on the burglary charge, * * * because it's separate conduct that you went back to this location clearly with the intent to steal property or cause harm to [the victim], I'm going to make those 60 months consecutive to the 90 months, and you'll serve that after you finish the 90 months on the robbery."

Defense counsel objected, arguing to the trial court that "the burglary and the robbery occurred at the same time, they weren't separate inciden[ts]." The trial court responded, "I know, but I disagree with that and I've said that." Defense counsel responded, "And I'm simply preserving it for the record, Your Honor."

On appeal, defendant advances two assignments of error: (1) "The trial court violated its duty to adequately develop a record from which to determine whether new counsel is warranted after appellant requested new counsel[;]" and (2) "The trial court erred in imposing consecutive sentences." Defendant does not claim on appeal, as he did in the trial court, that the burglary and robbery offenses did not arise from the same continuous and uninterrupted course of conduct; nor does he identify what factual dispute exists in that regard.[2] Rather, in his summary of argument, defendant simply asserts that

> "[i]n this case, the trial court imposed consecutive sentences rather than the presumptive concurrent sentences by making findings of fact. This is flatly prohibited by *Blakely*. Accordingly, appellant is entitled to resentencing."

In the argument portion of his brief, defendant invokes our decision in *Jury* and argues that, under *Blakely*, the court erred in imposing consecutive sentences. Though conceding that our decision in *Fuerte-Coria* controls the issue, he contends that the decision was "wrongly decided and should be overruled."[3] The only discussion he offers as to how *Blakely*

---

[2] ORS 137.123(2) authorizes the imposition of consecutive sentences when a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct.

[3] Because his brief was written before *State v. Ice* was decided, defendant does not rely on *Ice*.

applies to the facts of his case, is found in the following conclusory sentences:

> "In this case, the trial court imposed consecutive sentences on counts one and two. These two crimes occurred simultaneously against the same victim. Whatever facts found by the court to support the consecutive sentences on counts [sic] could be found only by a jury under *Blakely*. Absent those findings, the court was required to impose the sentences concurrently. ORS 137.123(4). As such, the trial court erred in imposing consecutive sentences."

Defendant appears to assume that the trial court found that the two crimes did not arise from a continuous and uninterrupted course for purposes of ORS 137.123(2)—a point that, as the majority concedes, 218 Or App at 595-96, is less than clear. If that is in fact the case, then it is not clear what facts, on this record, are left for the jury to decide for purposes of ORS 137.123(2). Defendant's sole argument at trial was that *none of the contact with the victim actually occurred*. Essentially, he offered an "all or nothing" type of defense. The jury necessarily rejected his view of the facts when it convicted him of engaging in the contact that he claimed never occurred.

It is not apparent on this record what, if any, additional facts are left to be found by the jury. The jury decided that the events testified to by the victim actually occurred on March 1, 2003, as she said that they did. That may explain why, on appeal, defendant glosses over the subject of what issues of fact would be left for the jury on remand. Instead, defendant merely asserts that "whatever facts found by the court * * * could be found only by a jury." In the absence of any additional disputed facts, the question whether defendant's convictions arose from the same continuous and uninterrupted course of conduct was essentially one of law for the trial court.

In a related vein, one of the *Ailes* factors that we must consider is the competing interests of the parties regarding judicial economy. The majority's decision requires a new sentencing hearing and the attendant expense and delay to the public that accompanies a remand to the trial court. Defendant, on the other hand, seeks a "second bite at

the apple" without first explaining what facts he would submit to the jury or how he suffered an injustice as a result of the court's imposition of consecutive sentences.

That brings us to the Supreme Court's recent decisions in *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007), and *State v. Fults*, 343 Or 515, 173 P3d 822 (2007). In those cases, the Supreme Court cautioned against a "one-size-fits-all" approach to plain error review. The court also explained that one of the factors to consider in exercising our discretion is whether, in the particular case, there is a "possibility that [the] defendant made a strategic choice not to object to the sentence[.]" *Fults*, 343 Or at 523. The majority concludes, based on the timing of sentencing—six months before *Blakely*—that it is "highly unlikely" that defendant made a strategic choice not to object to judicial factfinding. In my opinion, the majority takes too narrow a view of the strategic considerations at play in this particular case. Defendant had asked the jury to believe his version of the facts—*i.e.*, that he never had any contact with the victim on March 1, 2003—and the jury flatly rejected his defense. Assuming that defendant believed that there were any additional facts that needed to be found in order to impose consecutive sentences, it is possible that defendant would have preferred to submit those facts to the court. Given defendant's trial strategy, which asked the jury to choose between two diametrically opposed factual scenarios, I would conclude that the record presents a competing inference that defendant had no interest in making a Sixth Amendment challenge to judicial factfinding for purposes of sentencing. For that reason, among others, I would decline to give defendant the benefit of an objection he did not make and that he had good reason for not making.

Finally, in *Ramirez*, the court explained, with respect to our conclusion that the state had no valid interest in requiring a defendant to serve an unlawful sentence, that "[a]lthough that rationale has a nice ring to it, it makes little real-world sense in cases like the present one, in which the record all but demands imposition of precisely the sentence that the trial court elected to impose." 343 Or at 514. Consistent with the court's focus on what makes "real-world sense" in cases such as this, I would require defendant to at least demonstrate (1) that he actually would have asserted his

right to a jury trial had he known about it; and (2) that the denial of a jury trial resulted in some substantial injustice to him. Given the jury's findings in this case and defendant's failure to explain what additional facts would have been submitted for the jury's determination, I would decline to exercise our discretion to correct any error in this case regarding the imposition of consecutive sentences.

The answer to curing inconsistencies like the one described above is to decide preservation issues on a case-by-case basis, considering whether the objectives of preservation are satisfied along with the other *Ailes* factors, and by exercising our discretion to review plain error *only* in extraordinary cases where the objectives of preservation are otherwise satisfied. *Jury* represents one end of the continuum and was an appropriate case in which to exercise our discretion. There, the defendant was able to demonstrate an error that truly affected his liberty interest. At the other end of the continuum is what occurred in *Ramirez*, where, according to the court, the evidence on the sentencing factor was so overwhelming "that it would not advance the ends of justice to remand for an unnecessary hearing." 343 Or at 514. Here, because of the conclusory nature of defendant's argument, we are left to speculate whether defendant's case is more like *Ramirez* or more like *Jury*. For the sake of consistency, this court will now be required to afford relief to future appellants on a plain error basis where the arguments are similarly conclusory in content. In doing so, the integrity of the preservation requirement in ORAP 5.45(1) will be significantly undermined. Accordingly, I dissent.

Wollheim, J., joins in this dissent.