Argued and submitted January 4, affirmed August 20, 2008, petition for review
denied January 29, 2009 (345 Or 690)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SANG VAN NGUYEN,
*Defendant-Appellant.*

Multnomah County Circuit Court
030130471; A130563

191 P3d 767

Daniel J. Casey argued the cause and filed the opening brief for appellant. On the supplemental brief was Sang Van Nguyen *pro se*.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals a judgment of conviction for eight counts of attempted aggravated murder, ORS 163.095(2)(d) and (e); two counts of first-degree assault, ORS 163.185(1)(a); one count of first-degree robbery, ORS 164.415(1)(b); two counts of first-degree kidnapping, ORS 163.235(1)(c); and one count of unauthorized use of a vehicle, ORS 164.135(1)(a). The convictions arise from an incident in which defendant beat the victim with a steel bar, bound his arms and legs, stabbed him in the back, dragged him into a shed, and then forced him into the trunk of a car for the purpose of killing him and dumping his body. On appeal, defendant asserts five assignments of error. We affirm.

■■ In defendant's first assignment of error, he contends that "[t]he trial court abused its discretion in denying defendant's motion for a mistrial when the [victim] invoked the Fifth Amendment at trial." The decision to grant or deny a mistrial is reviewed for abuse of discretion because the trial court is "in the best position to assess and to rectify the potential prejudice to the defendant." *State v. Farrar*, 309 Or 132, 164, 786 P2d 161, *cert den*, 498 US 879 (1990). Defendant asserts that the prosecution had reason to know that the victim would invoke his Fifth Amendment right at trial because he had previously invoked it during a pretrial hearing the day before trial. At that hearing, the victim repeatedly stated that he wanted to drop the case. For example, in response to the prosecutor's questions, the victim stated, "I do not want to prosecute [defendant]. I just want to drop the case. A few weeks after the incident occur[red], I want[ed] to write the paper to drop the case, but I didn't have the opportunity to." When the prosecutor continued to examine the victim, the victim replied, "That I don't remember much. I want to invoke the Fifth, not to talk about it."

The following day, during the trial, the prosecutor called the victim to testify. When the prosecutor asked the victim whether his car title had been returned to him, the victim replied, "I do not recall exactly," and then he said, "I want to take a [*sic*] fifth." The prosecutor repeated the question, which drew an objection from defense counsel on the ground that the question had been asked and answered. The court

sustained the objection and, acting *sua sponte*, excused the jury and engaged in a colloquy with the prosecutor and defense counsel. During that colloquy, defense counsel moved for a mistrial. The trial court then appointed separate counsel to represent the victim. After consulting with the victim, the victim's counsel informed the court that the victim was prepared to testify. The trial court, after hearing further arguments, denied defendant's motion for a mistrial, ultimately ruling that no prejudice had occurred. After the jury was brought back, the prosecutor again asked the victim, "Did you get your car title back from [defendant]," and the victim answered, "No."

On appeal, defendant reasserts his argument that the victim's invocation denied him a fair trial because it improperly invited the jury "to infer that the [victim] invoked his right against self-incrimination because he feared retaliation from defendant, and that the reason for such fear was that defendant had brutally beaten and stabbed the [victim] and was therefore guilty as charged." It follows, according to defendant, that the trial court erred when it refused to grant a mistrial.

Assuming without deciding that defendant's motion was timely made, that the victim had a Fifth Amendment privilege available to assert, and that the victim's invocation was improper, defendant's argument proves too much. The issue of the victim's reluctance to testify was an issue that permeated the entire trial, and, as the trial court explained in making its ruling, the jury was first made aware that the victim was a reluctant witness during the state's opening statement. The state was entitled to demonstrate the victim's reluctance to testify in order to explain any vagaries or inconsistencies in his testimony. Under the circumstances, the trial court acted within its discretion when it ruled that the victim's brief reference to the Fifth Amendment caused defendant "little or no prejudice."[1]

---

[1] Defendant additionally asserts that the trial court "abused its discretion in denying the defense motion for a mistrial" when the prosecutor, in closing arguments, commented on the victim's invocation of his Fifth Amendment right. Although defendant failed to object to that comment, he asserts that an objection "was not required in order [to] preserve this error, where the trial court already

██  In defendant's second assignment of error, he contends that the trial court erred in overruling his relevance objection to testimony about the prosecutor telling the victim that the charges would not be dismissed. We review a relevance ruling for legal error. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Defendant's relevance objection occurred while the prosecutor was questioning the victim about a meeting that they had had before trial:

"[THE PROSECUTOR]: Did you remember who [defendant] was, how you had met, and what he had done to you during our discussion on Friday?

"[THE VICTIM]:  Yes. I remember that, but I want to drop the charge.

"[THE PROSECUTOR]: Did you come before this court yesterday without these jurors and were you on the witness stand?

"[THE VICTIM]:  Correct.

"[THE PROSECUTOR]:  Did you have that same position or opinion that you wanted to drop charges yesterday?

"[THE VICTIM]:  Correct.

"[THE PROSECUTOR]:  * * * [D]id I tell you yesterday that the charges would not be dropped in this case?

"[DEFENSE COUNSEL]:  Objection. Relevance.

"[THE COURT]:  Overruled.

"[THE WITNESS]:  Correct.

"* * * * *

"[THE PROSECUTOR]:  * * * [D]o you understand that this matter, these charges, are not dropped at this time?

---

had denied the defense motion for a mistrial on the same underlying basis." In support of that assertion, defendant cites *Noteboom v. Savin*, 213 Or 583, 589, 322 P2d 916 (1958), in which the Supreme Court explained that "[i]t is the general rule that, when an objection has once been acted upon and overruled it need not be repeated to the same class of evidence since it may be assumed that the court will adhere to the ruling throughout the trial." That rule is inapplicable to the circumstances in this case where the state of the record changed after the initial ruling on defendant's motion. A new motion was necessary to allow the trial court to reassess any prejudice that existed as of closing arguments.

"[THE VICTIM]:   Yes, I understand."

On appeal, defendant argues that the victim's testimony that he knew he could not get the prosecutor to drop the charges was not relevant. The state responds that, because the evidence was probative of the victim's credibility and bias, the trial court correctly overruled the objection. OEC 402 provides that all relevant evidence is admissible and evidence that is not relevant is not admissible:

> *"All relevant evidence is admissible,* except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. *Evidence which is not relevant is not admissible."*

(Emphases added.) OEC 401 defines relevant evidence:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

It is always permissible to show the interest or bias of an adverse witness because the evidence of a witness's bias or interest goes to the witness's credibility. *State v. Hubbard,* 297 Or 789, 796, 688 P2d 1311 (1984). Here, evidence that the victim wanted the state to drop the charges gives rise to a reasonable inference that he was testifying against his will and, therefore, was biased in favor of defendant. Consequently, the trial court did not err in overruling defendant's objection.

■     In defendant's third assignment of error, he contends that the trial court abused its discretion in denying his motion for a mistrial because the prosecutor's parting exhortation to the jury to "protect us all" during closing argument was so inflammatory that it denied defendant a fair trial. The state responds that, "even were the prosecutor's comment to be improper, the trial court's curative instructions served to remedy any prejudice." The comment occurred at the end of closing arguments:

> "[THE PROSECUTOR]:   * * * [Defendant] would have ditched the car, got rid of it, chopped it up, distanced himself from it. This would have been news when the body was

found and maybe forgotten by most people for a long time or forever. But [the victim] wanted to live. He fought, came in here, didn't want to be here, did it. And that evidence is before you now. Convict [defendant]. Protect us all.

"[DEFENSE COUNSEL]: I object to that last comment, Judge. That's totally inappropriate.

"[THE COURT]: Well, I will instruct the jury that the arguments of counsel are not evidence. They are related to an attorney's view [of] what the evidence shows."

The court then sent the jury to the jury room for a recess before giving jury instructions, and, in its absence, defendant moved for a mistrial:

"[DEFENSE COUNSEL]: I move for a mistrial based on the last comment by the district attorney. To say that the jury should protect us all from [defendant], implying the people in the courtroom, the community at large, and including the jurors, is so improper and inflammatory that a mistrial should be granted.

"* * * * *

"[THE COURT]: Thank you. The motion for a mistrial is denied. However, [defense counsel], if you wish, I will further instruct the jury to disregard the last statement of the district attorney.

"[DEFENSE COUNSEL]: Without waiving my motion for mistrial, I think that would be appropriate."

After the jury returned, the trial court gave the following instruction:

"[THE COURT]: Ladies and gentlemen, I instruct you that you are to ignore and disregard the final comment of the district attorney in his rebuttal argument. Any questions?"

We will assume for purposes of the discussion that follows that the motion for a mistrial was timely made even though defendant's initial response to the statement was an objection that the trial court implicitly sustained. As stated above, the decision to grant or deny a mistrial is reviewed for abuse of discretion. When considering the validity of a curative instruction, the Supreme Court has explained that

"[j]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *State v. Terry*, 333 Or 163, 177, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002). In this case, the record shows that the trial court assessed the impact of the prosecutor's remark and selected a curative instruction as the means necessary to correct any prejudice that may have arisen. In light of the remark's brevity and the context in which it was made, we conclude that the trial court acted within the boundaries of its discretion by using a curative instruction rather than granting a mistrial.

■     In defendant's fourth assignment of error, he contends that "[t]he trial court erred in denying defendant's motion for judgment of acquittal on the charges of first-degree assault in Counts 9 and 10." Count 9 of the indictment charges that defendant "did unlawfully and intentionally cause serious physical injury to [the victim], by means of a dangerous weapon, to wit: asp or device similar to a baton[.]" Count 10 of the indictment charges that defendant "did unlawfully and intentionally cause serious physical injury to [the victim], by means of a dangerous weapon, to wit: a knife[.]" As quoted above, defendant's assignment of error on appeal implies that defendant moved for a judgment of acquittal on both counts.[2]

At trial, the victim identified, as a result of the attack, two scars on his head just above his right ear, a faded scar on his forehead, and a scar on his back just above the buttocks, all of which he showed to the jury. The photograph in evidence of the victim's scars led the prosecutor to describe the scar above the victim's right ear as "a bit of an arching scar," "just short of three inches long[,]" "about a half-inch wide[,]" and "prominent in that the hair does not grow where that scar is." Additionally, according to the photographs, the scar on the victim's forehead is "just short of three inches in length" and "a half-inch to an inch wide" but, as the victim testified, it has "kind of faded away." The other injury

---

[2] The effect of defendant's assignment of error is to assign error to two rulings made by the trial court, one as to each count. ORAP 5.45(2) contemplates that separate rulings should be challenged by discrete assignments of error.

suffered by the victim was a stab wound to his back, the subject of Count 10. Although the scar from that wound was clearly visible, it was in a location ordinarily covered by clothing.

At the conclusion of the state's case, defense counsel told the trial court:

"[DEFENSE COUNSEL]: I still have my motion for acquittal, and I'll be as quick as I can here.

"* * * * *

"As to assault in the First Degree, I will concede that a baton or Asp or similar item to the head could be viewed * * * by a jury as a dangerous weapon; however, the State also must prove a serious physical injury as defined by law, which is defined as creating a substantial risk of death, causing serious and protracted disfigurement or protracted impairment of health or protracted loss or impairment of any function of a bodily organ.

"There's been no testimony as to any damage, and I do not believe there is any in the medical records as to a bodily organ. Any disfigurement, the scarring that has been shown or testified to by [the victim] is not serious disfigurement. The closest there is [is] a scar on his forehead, which is relatively faint and would not qualify as serious. And there's been no evidence that during this incident that [the victim] was under a substantial risk of death."

Thereafter, defense counsel addressed the sufficiency of the evidence as to other counts, but made no reference to either Count 9 or 10.

As is evident from the above quotation, defense counsel did not refer expressly to Count 10 or to the evidence that the state had offered pursuant to the allegations in Count 10. The prosecutor, however, responded as if defense counsel had moved for a judgment of acquittal as to Count 10. He told the court, in part:

"The knife was used to inflict the stab wound to the back of [the victim]. * * * [N]ot only did we show the jury that stab wound which appeared to be the indentation of the skin, about an inch wide, quarter-inch high stab wound to just

above the buttocks and lower back area of [the victim], but further we introduced a photograph depicting that what is quite obviously a permanent scar to [the victim]."

Subsequently, without expressly referring to Count 10, the trial court denied the motion as to "all 14 counts."

On appeal, defendant argues:

"Fourth, the trial court erred in denying defendant's motion for judgment of acquittal on the charges of first-degree assault in Counts 9 and 10, because the [victim's] scars on which the prosecution relied did not qualify as 'serious and protracted disfigurement' and therefore did not constitute 'serious physical injury.' As to Count 9, the record did not show that the scars to the [victims's] head allegedly resulting from blows by a baton could be observed from some distance in a conspicuous location. As to Count 10, the only scar resulting from the knife wound was on the complainant's lower back, just above his buttocks, in an area normally covered by clothing."

The threshold issue regarding the fourth assignment of error is whether defendant adequately preserved his claims of error in the trial court as required by ORAP 5.45(1). Under that rule, if a claim is not properly preserved, we normally are without authority to review it. ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court.") It is clear from the above record that defendant did preserve his claim of error under the fourth assignment as it pertains to Count 9. Preservation as to Count 10, however, is more problematic.

In the trial court, defendant did not expressly refer to Count 10, its allegations, or the evidence that the state offered pursuant to those allegations. Nonetheless, the prosecutor responded as if defendant had included Count 10 in his motion for a judgment of acquittal. For purposes of analyzing whether defendant satisfied the requirements of ORAP 5.45, we will assume without deciding that defendant's motion included a motion directed at Count 10. However, our inquiry regarding preservation does not end at that point.

Preservation under ORAP 5.45 depends, in part, on whether an objection is "specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Also, another objective of the preservation rule is to ensure that adverse parties are not taken by surprise, misled, or denied the opportunity to present their positions on an issue raised by an adversary. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990). Those objectives promote the efficient administration of justice and the saving of judicial time by preventing litigants from speculating on a verdict in the trial court and then raising an issue for the first time on appeal if the verdict is against them. *Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977).

When those principles are applied to the circumstances in this case, it becomes clear that defendant did not preserve the issue that he raises on appeal in the trial court under his motion for a judgment of acquittal as to Count 10. The issue addressed by the prosecutor in the trial court was whether the scar left from the wound inflicted by defendant was "permanent." ORS 161.015(8) provides that a " 'serious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." The prosecutor's argument that the scar was "permanent" was made in the context of the "serious and protracted disfigurement" element of the statutory definition.

On appeal, however, defendant does not argue that no serious and protracted disfigurement occurred because the victim's scar was not permanent. Rather, as quoted above, he argues that no serious and protracted disfigurement occurred because the scar is "in an area normally covered by clothing." Had defendant made that argument in the trial court, the state would have had an opportunity to present its position on that issue and the trial court would have had an opportunity to correct any error that it may have otherwise made by denying the motion. The latter conclusion is further buttressed by defendant's reliance on *State v.*

*Moyer*, 37 Or App 477, 480-81, 587 P2d 1054 (1978), for the first time on appeal.[3] The prosecutor's argument was based on an assertion of fact—that the scar was permanent—and on an application of the language of the statute. The argument made under *Moyer* is predicated on a different fact issue, whether the scar could be covered by clothing, and on a different question of law—whether the legislature intended, as defendant argues, that scars normally covered by clothing are not the kind of injury contemplated by ORS 161.015(8). In sum, the state and the trial court never had the opportunity to address those issues, and, therefore, they are not preserved for purposes of appeal.[4]

■     Defendant did, however, preserve his claim of error regarding the denial of his motion for a judgment of acquittal on the charge of first-degree assault in Count 9. In reviewing a trial court's denial of a motion for a judgment of acquittal based on the sufficiency of the evidence, we review to determine whether a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hurst*, 147 Or App 385, 388, 936 P2d 396 (1997), *rev den*, 327 Or 521 (1998). In that regard, the Supreme Court has explained:

"In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any

---

[3] It is possible that, had it had the opportunity, the trial court may have interpreted the holding in *Moyer* to be a holding regarding the lack of permanency of the scarring rather than a categorical holding that any scar covered by clothing does not constitute serious and protracted disfigurement as a matter of law. In this case, however, we need not reexamine our holding in *Moyer* because the underlying issue that it frames was not presented to the trial court.

[4] In a submission of additional authorities, defendant raises for the first time on appeal the issue of the sufficiency of the evidence as to Count 10 on an "error apparent on the face of the record" basis under ORAP 5.45(1). We decline defendant's invitation to address his claim of error on that basis because, had he raised that issue in the trial court, it could have been potentially addressed both by the state and by the trial court, thereby obviating the need for an appeal. *State v. Soto-Nunez*, 211 Or App 545, 548-49, 155 P3d 96 (2007) (declining to exercise *Ailes* discretion to consider unpreserved error because, had the matter been brought to the trial court's attention, "it might easily have been remedied"). We note also that *Moyer* was decided approximately 30 years ago and that defendant does not persuasively explain why the same issue that he raises on appeal was not readily available to him for presentation to the trial court.

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Harris*, 288 Or 703, 721, 609 P2d 798 (1980). It is not proper for us to hold that there is a reasonable doubt because of conflicts in the evidence. After a verdict of guilty, such conflicts must be treated as if they had been decided in the state's favor. After the conflicts have been so decided, we must take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt. Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974)."

*State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

We conclude that a rational trier of fact could have found that the scars on the victim's head constituted serious and protracted disfigurement within the definition of ORS 161.015(8). That statute defines serious physical injury to include "physical injury * * * which causes serious and protracted disfigurement[.]" Here, there is evidence of "prominent" scarring above the victim's right ear approximately three inches long and about a half-inch wide where the hair does not grow back. *See, e.g.*, *Lambert v. Palmateer*, 187 Or App 528, 69 P3d 725, *rev den*, 336 Or 125 (2003) (holding that a reasonable factfinder could find serious and protracted disfigurement based on evidence of a "two-inch-long, half-inch-wide divot" in the victim's forehead).

■ In defendant's final assignment of error, he contends that the trial court erred when it sentenced him to consecutive sentences without first submitting to a jury the statutory facts supporting consecutive sentences. He relies on the holdings in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004); *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000); and *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ____ US ____, 128 S Ct 1657 (2008).

Having reviewed the record before us, we conclude that defendant failed to preserve the issue before the trial court that he raises in his fifth assignment of error. After the

jury found defendant guilty on all 14 counts, the trial court sentenced defendant on all of the convictions. The trial court, applying the factors of ORS 137.123(5)(a) and (b), ordered that three of the convictions be served consecutively to each other.[5] Defendant then objected to the imposition of consecutive sentences: "Just for the record, the defendant objects to consecutive sentences."

Defendant's statement that "defendant objects to the imposition of consecutive sentences" was not a sufficient explanation to inform the trial court of his position that the court could not lawfully impose consecutive sentences under ORS 137.123(5) without empaneling a jury. *See Wyatt*, 331 Or at 343 ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."). An objection to consecutive sentences "just for the record" without further specification as to the nature of the objection does not explain to a trial court in a meaningful way what error it purportedly made in order that it have the opportunity to correct the error.

Defendant, in the alternative, contends that we should review the trial court's imposition of consecutive sentences as error apparent on the face of the record under ORAP 5.45(1). Defendant's argument implicates our recent decision in *State v. Banks*, 218 Or App 593, 180 P3d 726

---

[5] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

(2008), in determining whether we should exercise our discretion to review defendant's claim of error in this case. In *Banks*, the defendant raised an identical unpreserved challenge to consecutive sentences. A majority of this court determined that "plain error" existed under *Ice* because " 'plain error' is determined by reference to 'the law existing at the time the appeal is decided.' " *Id.* at 596-97. We held in that case that the imposition of consecutive sentences without jury findings was an error of law under *Ice*, an error that was not reasonably in dispute, and an error that appeared on the face of the record. *Banks*, 218 Or App at 597. We then turned to the question of whether we should address the claim of error under ORAP 5.45 in light of the Supreme Court's holding in *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007). One of the factors that persuaded us to exercise our discretion to correct the error was that it was "highly unlikely that defendant made a 'strategic choice' to forgo his present objection to the consecutive sentence." *Banks*, 218 Or App at 597. That was because the defendant was sentenced in December 2003, or six months before *Blakely* was decided and at a time when, given the existing state of the law, there was little doubt that, had the defendant raised the issue, it would have been flatly rejected based on existing precedent.

This case differs from *Banks*, because in this case sentencing occurred in July 2005, nearly a year after *Blakely* was decided in June 2004. In other words, the precedent upon which the *Ice* court relied for its holding existed as of the time of sentencing in this case. Moreover, the state announced that it was seeking consecutive sentences at the commencement of the sentencing hearing but defendant's "just for the record" objection came after the consecutive sentences were imposed.[6] It is reasonable to infer under the circumstances that, had defendant desired that a jury determine the sentencing factors under ORS 137.123, he would have requested that it be empaneled before the sentences were imposed and that, therefore, he made a strategic choice not to request a jury. Because competing inferences could be drawn from the record as to why defendant did not preserve

---

[6] Apparently, according to the transcript of the sentencing hearing, a presentence investigation report furnished to defendant before sentencing also recommended consecutive sentences.

his request for jury findings under ORS 137.123, it would be improper for us to exercise our discretion to review his claim of error as error apparent on the face of the record. *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006).

Affirmed.