Argued and submitted August 26, 2010, conviction for first-degree assault
reversed; remanded for resentencing; otherwise affirmed March 23, 2011

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# SCOTT RUSSELL KUPERUS, II,
*Defendant-Appellant.*

Marion County Circuit Court
08C41055; A139824

251 P3d 235

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Rene C. Holmes, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Nakamoto, Judge.*

NAKAMOTO, J.

---

* Nakamoto, J., *vice* Landau, J., pro tempore.

## NAKAMOTO, J.

Defendant was convicted of first-degree assault, ORS 163.185, and second-degree assault, ORS 163.175, based on an incident in which he bit off a portion of the victim's ear. He appeals, contending that the trial court erred in denying his motion for judgment of acquittal on each offense. First, defendant argues that he could not be convicted for first-degree assault, because defendant's teeth are not considered a "dangerous weapon." Second, defendant argues that there was insufficient evidence to support his conviction for second-degree assault, because he did not cause the victim "serious physical injury." We reverse as to the first-degree assault conviction, and affirm as to the conviction for second-degree assault.

■ ■ "When the facts are not in dispute, we review the denial of a motion for a judgment of acquittal as a question of law." *State v. Nollen*, 196 Or App 141, 144, 100 P3d 788 (2004) (citation omitted). If the parties dispute the elements of a crime, we usually first determine what, precisely, the legislature intended to require the state to prove. *State v. Lockamy*, 227 Or App 108, 113, 204 P3d 822 (2009); *see also State v. Jones*, 223 Or App 611, 616, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009) ("[W]e first address * * * question[s] of statutory interpretation, which we review for errors of law.").

The relevant facts are not in dispute. During a physical altercation, defendant bit off a portion of the victim's left ear. The victim lost the soft outer edge of his ear below the cartilage portion of the helix (the curved top of the outer ear) and above the earlobe. A scar is visible where the missing portion of the ear should be, and the victim requires a prosthetic device for his ear.

Defendant was charged with first-degree assault and second-degree assault. At his bench trial, at the close of the state's case, defendant moved for a judgment of acquittal on both charges. Defendant argued that teeth are not a dangerous weapon, a required element of first-degree assault, and that there was insufficient evidence to prove second-degree assault, because the victim did not suffer a serious

physical injury. The trial court denied the motions, found defendant guilty on both charges, and merged the two convictions. On appeal, defendant renews his arguments.

We first address defendant's challenge to his conviction of first-degree assault under ORS 163.185. In interpreting a statute, the court's task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We first look at the text and context of the statute, and we will consider legislative history if it appears useful to the court's analysis. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009).

Assault and related offenses are codified at ORS 163.160 to 163.213. The elements of first-degree assault are contained in ORS 163.185, which provides, in part:

"(1) A person commits the crime of assault in the first degree if the person:

"(a) Intentionally causes serious physical injury to another by means of a deadly or dangerous weapon[.]"

A "dangerous weapon" is defined in ORS 161.015(1) as

"any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

Thus, to prove first-degree assault "by means of a * * * dangerous weapon," the state must establish that the object used was a "weapon, device, instrument, material or substance," and that "under the circumstances in which it is used, * * * [it] is readily capable of causing death or serious physical injury." ORS 161.015(1).

The trial court in this case focused on the issue of whether defendant's teeth could readily cause serious injury by biting. The court concluded that teeth, under these circumstances, are a dangerous weapon, but failed to specify whether teeth are a "weapon, device, instrument, material or substance." On appeal, defendant argues that his teeth do not qualify as a "dangerous weapon" under ORS 163.185(1)

because they are not a "weapon, device, instrument, material or substance" as those terms are used in ORS 161.015(1).

■     Absent a legislative definition, the court ordinarily presumes that the legislature intended terms to have their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. The plain meaning of the terms used in ORS 161.015(1) suggest something external to the human body and thus would not encompass defendant's own teeth. The dictionary defines "weapon" as an "instrument of offensive or defensive combat: something to fight with[.]" *Webster's Third New Int'l Dictionary* 2589 (unabridged ed 2002).[1] An "instrument" is defined as a "UTENSIL, IMPLEMENT," *Webster's* at 1172, implying a tool separate from the human body. The other terms used in ORS 161.015(1) similarly connote a thing or object different from a body part. The dictionary defines "device" as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function[.]" *Webster's* at 618. "Material" is defined as "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made * * * the finished stuff of which something physical (as an article of clothing) is made[.]" *Webster's* at 1392. Finally, "substance" means a "material from which something is made and to which it owes its characteristic qualities[,] * * * a distinguishable kind of physical matter[.]" *Webster's* at 2279.

Thus, the plain meaning of the terms used to define "dangerous weapon" in ORS 161.015(1) suggests that the legislature did not intend a defendant's own teeth to be considered as a "dangerous weapon," because teeth are not external to the human body.

The context of the first-degree assault statute and the legislative history of the revision of the assault-related offenses also support such a construction of the statute. In 1971, the legislature revised the assault offenses and enacted ORS 161.015 as part of a comprehensive revision to the

---

[1] Similarly, the Criminal Law Revision Commission commentary for the definition of "dangerous weapon" says that a "weapon" is "an instrument of offensive or defensive combat." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft & Report, § 3, 3 (July 1970).

Criminal Code by the Criminal Law Revision Commission (the commission). *See* Or Laws 1971, ch 743, §§ 3, 92-94. In its commentary concerning assault-related offenses, the commission noted that, under then-existing Oregon statutes, the "factors which aggravate an assault tend to fall into three categories." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 92-94, 95 (July 1970). The commission described one of those aggravating factors, the means employed to commit the assault, as follows: "Under Oregon law an assault committed with a dangerous weapon or while *armed* with a dangerous weapon carries a higher penalty than assault committed while *unarmed*[.]" *Id.* (emphasis added). The commission went on to explain that the "three aggravating factors which are now in Oregon law have been incorporated into the proposed draft and are the criteria used in determining the degree of assault." *Id.* Those passages from the commission's commentary make clear that, in classifying the severity of an assault, in part, on the use of a dangerous weapon in the commission of the crime, the legislature intended to distinguish between assaults committed without the use of an object external to the human body that could be used to harm the victim and those assaults in which such an object is used. *See also* ORS 163.175(1)(a) (with no reference to a deadly or dangerous weapon, providing that a person commits second-degree assault by intentionally or knowingly causing serious physical injury to another).

The state argues that there is some evidence in the legislative history to support its contention that a dangerous weapon can be a human body part. In particular, the state points to several remarks by Donald Paillette, revision project director. Paillette testified before the Senate committee considering the revisions to the Criminal Code and indicated that a "dangerous weapon" can be almost anything, and the commission's attempt was to include the vast array of "tools" that might be used as a weapon. Minutes, Senate Committee on Criminal Law and Procedure, SB 40, Feb 3, 1971, 4. The reference to "tools," though, suggests that a dangerous weapon must be an implement—not a part of the perpetrator's body. The state also identifies Paillette's remark two years earlier during a discussion within a subcommittee of

the commission concerning the definition of the term "deadly physical force." The subcommittee's minutes reflect that, when describing the difference between a deadly weapon and a dangerous weapon, Paillette indicated that a deadly weapon was something specifically designed as a weapon, whereas a dangerous weapon could be a fist. Minutes, Criminal Law Revision Commission, Subcommittee No 1, Feb 11, 1969, 19. That comment, though, did not occur when the subcommittee was considering the definition of the term "dangerous weapon." In light of the plain text, context, and other legislative history, a single reference is not enough to convince us that a dangerous weapon is meant to be a part of a person's body. *See State v. Kelly*, 229 Or App 461, 466, 211 P3d 932, *rev den*, 347 Or 446 (2009) ("Cherry-picked quotations from single legislators or of nonlegislator witnesses are likely to be given little weight, as the likelihood that such scraps of legislative history represent the views of the institution as a whole is slim."). Further, the Supreme Court has suggested that the official commentary to the Criminal Law Revision Commission is superior to other legislative history. *State v. White*, 341 Or 624, 639 n 7, 147 P3d 313 (2006) (noting existence of "extensive legislative history" in addition to the commission's commentary, but concluding that the official commentary is determinative of legislative intent). In this case, through the commission's official commentary, the commission and the legislature ultimately stated the intention that a "weapon" should be viewed as something with which a person could be armed or fortified. Because a defendant does not arm himself with his own body and parts thereof, including his teeth, his own teeth cannot be considered a dangerous weapon for purposes of first-degree assault.

We note that in *State v. Wier*, 22 Or App 549, 550, 540 P2d 394 (1975), we addressed a similar issue, holding that bare hands are not a dangerous weapon for purposes of second-degree assault as then defined. We explained in that case that the statutory scheme for assault sets out a series of offenses ranging from a misdemeanor to felonies, depending on such factors as the extent of the victim's injury or the potential dangerousness of the means employed to cause injury. *Id.* at 552. The legislature, we explained, could not have intended for the bare human hand to be a dangerous

weapon, because if that were the case, a person would never be charged with assault in the third degree, but would always be charged with the more serious offense of second-degree assault, which included causing any physical injury "by means of a deadly or dangerous weapon":

> "Given that the hand can always, at least as a theoretical possibility, cause serious physical injury, what conduct would still be covered by third degree assault? None that we can imagine. The only way to give effect to all parts of the statutory scheme is to hold that the legislature did not intend that a hand could be a dangerous weapon."

*Id.* (footnote omitted). The *Wier* court further noted that, before the Criminal Code overhaul, assaults with bare hands were not prosecuted under *former* ORS 163.240 (1969), which covered assault while *armed* with a dangerous weapon, but were usually prosecuted under *former* ORS 163.255 (1969), which covered assaults while "not * * * armed with a dangerous weapon." 22 Or App at 552 n 4.

In light of our conclusion that a defendant's own teeth are not a dangerous weapon, we decline the state's invitation to consider whether *Wier* correctly decided that hands are not dangerous weapons. We also do not reach defendant's secondary argument that the state failed to present sufficient evidence that teeth are "readily capable" of causing death or serious physical injury when used to bite someone's ear. Because defendant's teeth are not a dangerous weapon, the trial court erred in denying defendant's motion for judgment of acquittal for first-degree assault.

■ We now turn to defendant's second assignment of error. Defendant contends that the trial court erred in denying his motion for judgment of acquittal for second-degree assault because there was insufficient evidence to show that the victim suffered a serious physical injury. In response, the state argues that the trial court reasonably found that the victim suffered serious and protracted disfigurement, and therefore sufficient evidence that the victim suffered a serious physical injury exists. We agree with the state.

■ When determining the sufficiency of evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the state, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *see also State v. Rodriguez / Buck*, 347 Or 46, 55, 217 P3d 659 (2009) (applying that standard in appeal following a bench trial); *State v. Nguyen*, 222 Or App 55, 66-67, 191 P3d 767 (2008), *rev den*, 345 Or 690 (2009). As pertinent here, to be convicted of second-degree assault, ORS 163.175(1)(a) requires that the defendant "[i]ntentionally or knowingly cause[ ] serious physical injury to another[.]" The main issue in this case is what suffices as "serious physical injury." As defined in ORS 161.015(8), serious physical injury includes "physical injury which * * * causes serious and protracted disfigurement[.]"

Here, the lower portion of the victim's right ear is visibly missing. Although his hearing is not impaired, he requires a prosthetic replacement. Moreover, there is a visible scar approximately four and one-half to five centimeters long where the portion of the ear is missing. Based on those facts, there was sufficient evidence for the trial court to find that the victim suffered a serious and protracted disfigurement and, thus, a serious physical injury. *Cf. Nguyen*, 222 Or App at 67 (a reasonable factfinder could find serious and protracted disfigurement based on evidence of " 'prominent' scarring above the victim's right ear approximately three inches long and about a half-inch wide where the hair does not grow back").

Conviction for first-degree assault reversed; remanded for resentencing; otherwise affirmed.