Argued and submitted May 2, decision of Court of Appeals reversed; judgment of
circuit court affirmed December 13, 2007, reconsideration allowed; final sentence
of opinion amended to read as follows: "The case is remanded to the Court of
Appeals for consideration of defendant's remaining assignments of error"
February 13, 2008
See 344 Or 195, 179 P3d 673 (2008)

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ANASTACIO RAMIREZ,
*Respondent on Review.*

(CC C030767CR; CA A123657; SC S054267)

173 P3d 817

Jonathan H. Fussner, Assistant Attorney General, Salem,
argued the cause and filed the brief for petitioner on review.

With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jamesa J. Drake, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

GILLETTE, J.

---

** Linder, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This criminal case is the latest in a series of cases that reflect the efforts of the Court of Appeals and of this court to understand, follow, and apply the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). In those cases, the Court held that a criminal defendant has a right under the Sixth Amendment to the United States Constitution to have a jury determine, beyond a reasonable doubt, virtually all facts legally essential to the sentence that a defendant receives.[1] No one at this point is quarreling respecting the meaning or scope of the *Apprendi* / *Blakely* rule. However, the parties are at odds over whether, on the facts of this case, an arguable *Apprendi* / *Blakely* violation that was not brought to the trial court's attention at the time that it occurred nonetheless is (or could be) "an error of law apparent on the face of the record" (*i.e.*, "plain error"),[2] as that phrase is used in ORAP 5.45(1).[3] The Court of Appeals determined that an *Apprendi* / *Blakely* violation was present in this case, resulting in defendant receiving a sentence in excess of that authorized by law. The court further determined that the error was plain. *State v. Ramirez*, 205 Or App 113, 123-25, 133 P3d 343, *adh'd to on recons*, 207 Or App 1, 139 P3d 981 (2006). The court then went on to hold that defendant's conviction should be reversed, stating, "The state has no valid interest in requiring defendant to serve an

---

[1] More specifically, the Court held in *Apprendi* that,

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

530 US at 490. In *Blakely*, the Court clarified its ruling, making clear that, by the phrase "statutory maximum," the Court meant the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 US at 303 (emphasis in original).

[2] We hereafter use the phrase "plain error" in order to spare the reader endless repetition of the phrase, "an error of law apparent on the face of the record."

[3] ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and assigned as error in the opening brief * * *, provided that the appellate court may consider an error of law apparent on the face of the record."

unlawful sentence; for defendant, * * * [on the other hand,] a significant liberty interest is at stake." *Id.* at 125. We allowed the state's petition for review to consider whether the Court of Appeals properly applied the rule of ORAP 5.45(1) respecting plain errors. We now hold that the Court of Appeals erred in considering the claimed error.

The facts relevant to the legal issue before us are undisputed; it is their legal significance that causes debate. Defendant accosted a woman outside the building where she worked. He placed a handgun to her head and threatened to kill her. Defendant then ordered the victim onto her hands and knees, shot her in the head, and ran off. The victim survived, but lost her right eye and suffered other injuries. Defendant was charged with attempted murder, first-degree assault, and unlawful use of a weapon. He invoked his right to a jury trial, and a jury ultimately found him guilty on all counts.[4] At the conclusion of that part of the trial, the court thanked the jurors for their time and effort and discharged them. Defendant did not object to that procedure. Neither, however, did he at that time execute a written waiver of jury trial respecting the fact-finding process that was yet to come.

The court then conducted a sentencing hearing without a jury. At the conclusion of that hearing, the court made factual findings to support an "upward departure" sentence for the first-degree assault conviction, *i.e.*, a sentence of greater length than that which, under existing sentencing guidelines, could be imposed solely by virtue of the jury's verdict finding defendant guilty of that offense. Specifically, the court found that the defendant caused permanent injury to the victim, that the victim was particularly vulnerable, and that defendant was persistently involved in criminal activities. The court also stated that, in its view, any of the findings, standing alone, justified an upward departure sentence. Defendant did not object on the record to having those departure facts determined by the trial judge rather than by the jury. The court then imposed an upward departure sentence

---

[4] At trial and at sentencing, defendant never disputed that someone shot the victim and caused her to lose sight in her right eye. The only dispute that he raised was whether he was the person who shot her. The jury found beyond a reasonable doubt that defendant caused that injury when it convicted him of attempted murder and first-degree assault.

on the assault conviction, ordered that that sentence be served consecutively with the sentence imposed on defendant's attempted murder conviction, ordered that defendant's sentence on the unlawful use of a weapon conviction be served consecutive to the other two sentences, and denied defendant eligibility either for early release or sentence reduction programs.

Defendant appealed his sentences to the Court of Appeals. There, he argued that, under *Blakely*, the trial court erred in imposing a departure sentence based on facts that he did not admit and that had not been found by a jury.[5] Defendant acknowledged that he had not made that argument in the trial court, but contended that the Court of Appeals should consider the matter as plain error under ORAP 5.45(1).

The Court of Appeals began by reviewing this court's case law explaining the procedure that an appellate court should follow before reaching an inadequately preserved or inadequately raised claim of error. It noted that our cases have identified three criteria that must be met for a claim of error to be considered plain error:

> " '(1) [The claimed error] is an error of law; (2) the [claimed] error is obvious, not reasonably in dispute; and (3) it appears on the face of the record, *i.e.*, the reviewing court need [not] go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable.' "

*Ramirez*, 205 Or App at 115-16 (quoting *State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000), which, in turn, cites *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991)).

The Court of Appeals then extensively reviewed this court's recent decision in *State v. Gornick*, 340 Or 160, 130

---

[5] Defendant also assigned error to the trial court's imposition of a consecutive sentence on the unlawful use of a weapon conviction, and to the trial court's decision denying him eligibility for "good time" credits. The Court of Appeals did not separately discuss those claims of error but remanded the entire case to the trial court for resentencing. *Ramirez*, 205 Or App at 125. Consistent with that approach, the state's petition for review and our own discussion of the case focus only on the departure sentence issue.

P3d 780 (2006), a case in which a defendant, after waiving his right to a jury trial and being convicted by a trial court, claimed that the trial court committed plain error at sentencing by imposing an upward departure sentence based on aggravating facts that the trial court found. The Court of Appeals concluded that this court rejected that plain error argument in *Gornick*, because we believed that it was permissible to infer, from the fact that the defendant had waived his right to a jury trial respecting his guilt and had not objected when the trial court found departure facts, that the defendant did not wish to assert any right that he may have had to have a jury determine those departure facts. *Ramirez*, 205 Or App at 118-22. The Court of Appeals then stated, with respect to this court's decision in *Gornick*:

> "*Gornick* stands for the proposition that, if we are able to draw at least two inferences from the defendant's failure to object, one of which suggests that the trial court erred and another of which suggests that the trial court did not err, then the error is not 'plain' within the meaning of ORAP 5.45(1). It further seems fair to say that *Gornick* holds that, *on the facts of that case*—in which the defendant waived a jury trial and expressly consented to the trial court's authority to impose the maximum sentence—multiple inferences could be drawn from the defendant's failure to object to the trial court making aggravation findings. One of those inferences was that the defendant did not waive his right to a jury trial as to the departure sentence facts, in which case the trial court erred. A second of those inferences was that the defendant did waive his right to a jury trial as to those facts, in which case the trial court did not err. We do not read *Gornick* broadly to hold that, in all cases in which a defendant failed to object to the trial court's departure findings, we cannot properly conclude that the trial court plainly erred in violation of *Blakely* and *Apprendi*. Whether the trial court committed plain error will depend on the facts of each case."

*Ramirez*, 205 Or App at 123 (emphasis in original).

Turning to the present case, the Court of Appeals distinguished the facts from those in *Gornick*. The court emphasized that, in the present case, defendant had not waived his right to a jury before trial and had never expressly consented to the trial court's authority to proceed without the

aid of a jury to find facts to support a departure sentence; neither had defendant admitted those departure facts. From that procedural history, the Court of Appeals concluded that, unlike in *Gornick*, it could not infer that defendant intended to forgo his right to have a jury determine whether departure factors were present in the case. It followed, the court held, that no competing inferences arose out of defendant's failure to object when the trial court made those findings. Accordingly, the Court of Appeals held that the trial court committed plain error when it made those findings itself and relied on them to impose a departure sentence. *Ramirez*, 205 Or App at 124-25. The court then elected to exercise its discretion to address that error, citing the interests of the parties and the gravity of the error. Having done so, the Court of Appeals vacated defendant's sentence and remanded the case to the trial court. *Id.* at 125. We allowed the state's petition for review.[6]

In reviewing the Court of Appeals' determination to consider the error at issue as plain error, we ordinarily would approach the matter using the same two-step analysis that we employed in *Gornick*. First, we would consider the three "plain error" criteria set out in *Ailes* (was the claimed error one of law, was it obvious and not reasonably in dispute, does it appear on the face of the record without requiring the court to choose between competing inferences). Next, we would determine whether, assuming that the *Ailes* inquiry discloses

---

[6] Before turning to the state's challenge, we briefly address an argument that the defendant raised, for the first time, in his brief on the merits in this court. Defendant argues that, in addition to any other error that the trial court might have made, the trial court committed plain error by failing to employ the "beyond a reasonable doubt" standard of proof to its departure factor findings. Defendant observes that the court did not state on the record that it found those factors "beyond a reasonable doubt." According to defendant, because case law at the time of the sentencing hearing permitted sentencing courts to employ a lesser standard than "beyond a reasonable doubt" in finding the departure factors, this court cannot reasonably infer that the trial court in this case found those facts beyond a reasonable doubt. Moreover (according to defendant), a defendant never can be presumed to have waived the reasonable doubt standard of proof and, therefore, the error is plain. Whatever the merits of defendant's argument, we do not reach them here. As noted, defendant not only failed to raise his point in the trial court, he also failed to raise it in the Court of Appeals. Defendant's argument simply comes too late to be entitled to discussion now. We focus on the errors that defendant *did* raise in the Court of Appeals and that that court elected to consider.

a "plain" error, the appellate court properly exercised its discretion to consider that error. *Gornick*, 340 Or at 166.

That ordinary line of inquiry immediately presents us with two choices in this case. The first choice would be to omit any discussion of the first step of the plain error analysis because, if we are of the view that the Court of Appeals erred in the manner in which it dealt with the *second* step of the plain error analysis (and we are of that view), there is no need to address the first step.

■ This court could, if it chose, nonetheless undertake to review the Court of Appeals' approach to the first half of the analysis. Under that analysis, it could be argued, *inter alia*, that, having *had* a jury trial respecting guilt, defendant needed to speak up when the trial judge thereafter dismissed the jury without submitting the alleged departure factors to them if, as he now claims, defendant in fact was opposed to the trial court following that procedure. On the other hand, that argument, although interesting, may not arise again in future cases because the legislature has seen fit to enact a statutory procedure governing the issue. Or Laws 2005, ch 463, §§ 1-7, *compiled as a note at* ORS chapter 136 (2005); *see also* Or Laws 2007, ch 16, § 1 (repealing Oregon Laws 2005, chapter 463, section 20, which provided for sunset of sections one through seven on January 2, 2008). In this case, we think that it is more expeditious to assume that the judge's act in dismissing the jury was error and to move directly to the second half of the *Ailes* analysis, *viz.*, a determination whether the Court of Appeals properly exercised its discretion to review the alleged error. We turn to that inquiry.

Respecting that issue, the Court of Appeals reasoned:

> "Considering the interests of the parties and the gravity of the error, we conclude that it is appropriate [to reach it]. *The state has no valid interest in requiring defendant to serve an unlawful sentence; for defendant, however, a significant liberty interest is at stake.*"

205 Or App at 125 (emphasis added). That sentiment notwithstanding, we think that even a brief consideration of defendant's Sixth Amendment claim in the context of the

facts of this case establishes that the Court of Appeals erred in exercising its discretion to reach that claim.

As noted, the trial court explained that it would have imposed an enhanced sentence in this case based solely on its finding that the victim suffered a permanent injury as a result of defendant's crimes. *See* OAR 213-008-0002(1)(b)(I) (listing "permanent injury to the victim" as a basis for imposing a departure sentence). The undisputed evidence in the record on that issue is that the victim lost her right eye as a result of being shot in the head. That loss unquestionably is permanent.

In light of those facts, consideration of the competing "interests of the parties"—the factor on which the Court of Appeals relied—leads to precisely the opposite conclusion from the one that the Court of Appeals reached. If, as the record reveals, there is no legitimate debate that the victim suffered a permanent injury as a result of the shooting, then defendant's interest in a second hearing is minimal, if not nonexistent: A second hearing would only confirm that the departure sentence was warranted. The state, for its part, has a significant interest in avoiding a second, unnecessary sentencing hearing. Viewed in that light, the competing interests of the parties establish that this was not an appropriate case in which to consider defendant's unpreserved error.

The Court of Appeals also relied, in choosing to exercise its discretion, on the "gravity of the [trial court's] error." Again, viewed in context, the failure to submit the question whether the victim sustained a permanent injury to a jury can hardly be described as grave. On this record, no reasonable factfinder (whether a judge or a jury) could conclude anything other than that the victim suffered a permanent injury. Once again, this consideration does not support the Court of Appeals' discretionary choice.

Furthermore, this court has listed a number of other factors that bear on whether an appellate court should exercise its discretion to reach an unpreserved error. *Ailes*, 312 Or at 382 n 6. One of those factors, "the ends of justice in the particular case," requires a court to consider whether, in the context of an individual case, reaching the unpreserved error

would advance the ends of justice. When, as in this case, the evidence on a sentencing factor is overwhelming, it would not advance the ends of justice to remand for an unnecessary hearing.

Finally, there is the court's assertion that the state "has no valid interest in requiring defendant to serve an unlawful sentence." Although that rationale has a nice ring to it, it makes little real-world sense in cases like the present one, in which the record all but demands imposition of precisely the sentences that the trial court elected to impose. That factor does not, on the facts of this case, justify the Court of Appeals' exercise of discretion. *See also State v. Fults*, 343 Or 515, 173 P3d 822 (2007) (further elaborating on limited utility of the "no valid interest" rationale).

It follows from the foregoing considerations that the Court of Appeals abused its discretion and, therefore, erred in considering the allegedly plain error committed by the trial court. The Court of Appeals decision to do so is reversed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.