Submitted August 27, remanded for resentencing; otherwise affirmed
December 3, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDOLPH DEL CALHOUN NELSON,
*Defendant-Appellant.*

Linn County Circuit Court
05122607; A134393

197 P3d 1130

Peter Gartlan, Chief Defender, and Ernest G. Lannet, Senior Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the briefs for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Robert M. Atkinson, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Landau, Judge, and Schuman, Judge.

BREWER, C. J.

## BREWER, C. J.

This case presents the question of whether the testimonial statement of a declarant, admitted for the purpose of impeaching the declarant after he or she has refused to testify, is barred by the rule in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). We hold that it is not. In a supplemental assignment of error, defendant argues that his consecutive sentences on three counts of identity theft, ORS 165.800, violated the rule in *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___ , 128 S Ct 1657 (2008). Defendant acknowledges that the issue raised in his supplemental assignment of error is unpreserved, but urges us to review it as plain error. We agree that the error is plain, and we exercise our discretion to correct it. Consequently, we remand for resentencing; otherwise we affirm.

The pertinent facts are not in dispute. For a time, defendant and another man, Derrick, were in jail together. Defendant eventually was released. Derrick remained in jail and was legally disqualified from continuing to receive unemployment benefits. After being released from jail, defendant, using Derrick's name and Social Security number, reactivated Derrick's unemployment claim and received and cashed three checks made out to Derrick. With respect to each of those checks, defendant was charged with theft, identity theft, and forgery.

Defendant admitted at trial that he had obtained and cashed the unemployment checks and, thus, was guilty of theft; however, defendant asserted that Derrick had given him permission to receive and cash the checks and, therefore, he was not guilty of identity theft and forgery. Derrick refused to testify at defendant's trial. In support of his theory, defendant offered into evidence an unsigned letter, purportedly written by Derrick, that, defendant argued, showed that Derrick had given him permission to receive and cash the checks. The state objected to the admission of the letter on authentication grounds, but the trial court admitted it into evidence.

In response, the state proffered testimony from Detective Kelley that Derrick had told him that he had not

given anyone permission to receive and cash the checks. The statement was admissible, the state argued, because it was a prior inconsistent statement of the declarant, Derrick, and thus was nonhearsay, admissible under OEC 806 for the purpose of impeaching the statement contained in the letter purportedly written by Derrick.[1] The court admitted the testimony, reasoning:

> "In other words, it's not necessarily substantive evidence, but you're saying [the letter] is a statement made by Mr. Derrick and we want it in because it's got some indicia of reliability which is on the border, but assuming that that's true—but once that's in, doesn't the State have an opportunity to present any inconsistent statements with that?

> "* * * * *

> "* * * I think once you offer the letter, then I think the state has the right to offer an inconsistent statement only to the extent that he didn't authorize anybody. Not an accusatory statement towards the defendant. I think you get into *Crawford* problems there even though it's inconsistent."

At trial, the state called Kelley as a rebuttal witness. The prosecutor asked Kelley if "Mr. Derrick t[old] you that he did not give anyone permission to start his unemployment checks again." Kelley answered, "That's correct." The jury found defendant guilty, and he appeals from the ensuing judgment of conviction.

■ In his first assignment of error, defendant argues that the admission of Derrick's statement to Kelley violated his right to confrontation under the Sixth Amendment to the United States Constitution.[2] Defendant argues that the statement was testimonial and was admitted for its truth,

---

[1] OEC 806 provides, in part:

"When a hearsay statement * * * has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the hearsay statement of the declarant, is not subject to any requirement under [OEC 613] relating to impeachment by evidence of inconsistent statements."

[2] Defendant does not advance an argument under the Oregon Constitution.

and that its admission violated his right to confrontation, because Derrick refused to testify and defendant did not have an opportunity to cross-examine him. Defendant argues that the disputed issue whether Derrick consented to defendant's actions went to the heart of defendant's theory of the case and, thus, the trial court's error was not harmless beyond a reasonable doubt. The state counters that the trial court correctly characterized Kelley's recital of Derrick's statement as a prior inconsistent statement offered solely for the impeachment of a hearsay declarant. According to the state, such statements are not barred by the rule in *Crawford*. We agree.

During its colloquy with counsel, the court emphasized that it was admitting the statement for the limited purpose of impeaching the letter offered by defendant. The court was aware of the *Crawford* issue raised by defendant and stated that "[i]t's clearly a hearsay statement, I agree with that, but it's an inconsistent statement if you see what I'm saying." The court's rationale for admitting the statement was to give the state the opportunity to impeach the declarant, Derrick: "I think once you [defendant] offer the letter, then I think the state has the right to offer an inconsistent statement only to the extent that he didn't authorize anybody."

Defendant is mistaken in asserting that the trial court admitted Derrick's statement to Kelley "for its truth." It is apparent from the quoted colloquy that the court recognized that the statement would be inadmissible if used for *any purpose other* than impeachment. The court crafted its ruling to cabin the state's use of the statement, and the state complied with that limitation when it called Kelley as a rebuttal witness. Admission of the statement was consistent with the provision for impeachment of hearsay declarants under OEC 806. Accordingly, we turn to the question whether admission of the statement violated defendant's Sixth Amendment right to confrontation.[3]

---

[3] Defendant does not assert that, because the jury was not instructed that the evidence must be considered only for the purpose of impeachment, it was necessarily admitted for its truth. Defendant did not request a limiting instruction and failure to do so generally constitutes a waiver. OEC 105; *see also* Laird C. Kirkpatrick, *Oregon Evidence* § 105.03 (5th ed 2002) ("Rule 105 requires that counsel specifically request a limiting instruction; failure to do so will generally waive the right to

The question whether nonhearsay evidence implicates the Sixth Amendment was dealt with in passing by the Supreme Court in *Crawford*. As Mueller and Kirkpatrick explain:

"*Crawford* * * * comment[ed] that nonhearsay uses of out-of-court statements do not implicate the confrontation clause and that these uses are in effect nontestimonial uses. Thus, statements may be admitted to provide context for other statements without offending the *Crawford* doctrine. The same applies to statements offered as background to explain acts of law enforcement officers during investigations, which are often admitted as nonhearsay—analytically, as showing what information the officers had."

Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* § 8:27, 213-14 (3d ed 2007) (footnote omitted). The Court in *Crawford* had cited with approval its earlier opinion in *Tennessee v. Street*, 471 US 409, 414, 105 S Ct 2078, 85 L Ed 2d 425 (1985), in which the Court held:

"The *nonhearsay* aspect of [a codefendant's] confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination * * * was satisfied by [the sheriff's] presence on the stand. If respondent's counsel doubted that [the codefendant's] confession was accurately recounted, he was free to cross-examine the Sheriff. * * * In short, the State's rebuttal witness against respondent was not Peele, but [the sheriff]."

(Citations omitted; emphasis in original.) *See Crawford*, 541 US at 59 n 9 ("The Clause also does not bar the use of

claim error on appeal."). The Supreme Court has recognized the possibility that evidence of prior inconsistent statements used to impeach a hearsay declarant can also be inadmissible hearsay and has emphasized the function of a limiting instruction in that situation. *See State v. Guzek*, 336 Or 424, 449 n 18, 86 P3d 1106 (2004) ("Of course, defendant's evidence of inconsistent statements * * * also had a *possible* hearsay purpose[.] * * * A limiting instruction to the jury * * * often assists in guarding against a jury using such statements for the wrong purpose."). Nonetheless, in this case both the trial court and the parties understood that Derrick's prior statement to Kelley was being admitted for the limited purpose of impeaching Derrick's credibility, thus making his purported statement in the letter proffered by defendant less believable. Defendant does not argue that the trial court erred by failing *sua sponte* to instruct the jury that Derrick's statement was admissible only for the purpose of impeachment. Consequently, we do not reach that question.

testimonial statements for purposes other than establishing the truth of the matter asserted." (citing *Street*, 471 US at 414)). In the wake of *Crawford* several courts have interpreted the reference to *Street* in *Crawford* as preserving the use of nonhearsay statements by nontestifying declarants. *See United States v. Jimenez*, 513 F3d 62, 81 (3rd Cir 2008), *cert den sub nom Abreu v. United States*, ____ US ____ , 128 S Ct 2460 (2008) ("Nonhearsay use of evidence as a means of demonstrating a discrepancy does not implicate the Confrontation Clause."); *see also United States v. Logan*, 419 F3d 172, 177-78 (2nd Cir 2005), *cert den*, 546 US 1110 (2006) (holding that, under *Street*, admission of co-conspirators' alibi statements through testimony of police officer did not violate Sixth Amendment because statements were not used for their truth).

We reach the same conclusion. In this case, the challenged statement was offered solely for the purpose of impeaching the letter offered by defendant. After defendant had testified to the contents of the letter, the state called Kelley as a rebuttal witness to recount Derrick's statement that he had not given anyone permission to use his unemployment account. Admission of that statement was proper under OEC 806 as impeachment of a hearsay declarant and, because the statement was not offered for its truth, defendant's Sixth Amendment right to confrontation was not violated.

■ We turn to defendant's supplemental assignment of error. Defendant was sentenced to two consecutive 13-month prison terms for identity theft based on Counts 7 and 10 of the indictment. The sentences were imposed consecutively to one another and to a 26-month prison sentence imposed on Count 4. Count 4 had alleged that defendant committed identity theft on April, 1, 2005; Count 7 alleged that defendant committed identity theft on April 14, 2005. Count 10 alleged that defendant had committed identity theft on April 14, 2005, differentiated from the identity theft alleged in Count 7 by the identifying number of the check that defendant cashed.

The trial court sentenced defendant to 26 months' imprisonment on Count 4 based on defendant's "persistent

involvement" in property crimes. ORS 137.717.[4] The court then imposed a 13-month prison sentence on Count 7, to be served consecutively to the sentence imposed on Count 4, because "they were separate and distinct incidences, separate checks, separated by time and place, and clearly consecutive sentences are appropriate." With regard to Count 10, the trial court imposed a 13-month prison sentence, to be served consecutively to the sentence on Count 7, reasoning that "although the conduct was similar in nature to counts four and seven, that it was and is a different check separated by time and place and it does not merge or is not appropriate for concurrent sentences." *See* ORS 137.123.[5]

As discussed, defendant acknowledges that his challenge to his consecutive sentences is unpreserved, but he urges us to review it as plain error. For the following reasons, we conclude that the error is plain and exercise our discretion to correct it.

In *Ice*, the Supreme Court held that the Sixth Amendment right to jury trial as interpreted by the United States Supreme Court in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), applies to facts

---

[4] Defendant does not assign error to the departure sentence on Count 4. Defendant executed a written waiver of his right to a trial by jury "only as to aggravating factor of persistent involvement in similar crimes."

[5] ORS 137.123 provides, in part:

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

"* * * * *

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

supporting the imposition of consecutive sentences under ORS 137.123. In *State v. Hagberg*, 345 Or 161, 169-70, 190 P3d 1209 (2008), the court further determined that, in a particular case, it may be possible to determine from the jury's guilty verdict that the jury necessarily—even if only implicitly—found such facts. Here, because the trial court did not expressly submit any facts supporting consecutive sentences to the jury, we consider whether, in finding defendant guilty, the jury necessarily, albeit implicitly, found such facts.

The record shows that the trial court instructed the jury as to the dates on which defendant was alleged to have committed his crimes. Specifically, and consistently with the indictment, the trial court instructed the jury that defendant allegedly committed Count 4 on April 1, 2005, and that he committed Counts 7 and 10 on April 14, 2005. On that record, even assuming that the trial court's instructions demonstrate that, in finding defendant guilty of Counts 4 and 7, the jury necessarily found that those two crimes did not arise out of the same continuous and uninterrupted course of conduct—thus qualifying those convictions for consecutive sentences under ORS 137.123(2)—the same cannot be said for Counts 7 and 10, which occurred on the same date.

Nor do the jury verdict forms remedy that deficiency. The jury returned three verdict forms. Each form included the number of a specific check and a list of the charges arising out of defendant's appropriation and utterance of that check. The forms did not include, however, the dates or places of any of defendant's alleged acts; accordingly, nothing in the verdict forms demonstrates that the jury necessarily found that defendant's convictions on Counts 7 and 10 did not arise out of the same continuous and uninterrupted course of conduct, as pertinent to ORS 137.123(2), or any other facts supporting consecutive sentences. Because neither the trial court's jury instructions nor the jury forms demonstrate that the jury necessarily found facts supporting imposition of a 13-month consecutive sentence on Count 10, the trial court plainly erred in imposing that sentence.

■ The question remains whether we should exercise our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). In

considering whether to exercise discretion to correct unpre-
served sentencing errors, we consider whether a defendant
encouraged the trial court's imposition of the erroneous sen-
tences, the possibility that the defendant made a strategic
choice not to object to the sentences, the role of other sen-
tences in the case, and the interests of the judicial system in
avoiding unnecessary, repetitive sentencing proceedings.
*State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007); *State v.
Ramirez*, 343 Or 505, 513, 173 P3d 817 (2007), *adh'd to as
modified on recons*, 344 Or 195, 179 P3d 673 (2008).

We exercise our discretion to correct the error in this
case for the following reasons. First, there appears to be no
"strategic" or "tactical" reason for defendant's failure to raise
the objection before the trial court. There is no indication
that, had defendant timely objected, any disadvantageous
consequences to his other sentences might have resulted.[6] At
sentencing, defendant's only argument against consecutive
sentences was that all of his conduct had been part of "one
common scheme"; his failure to challenge the trial court's
authority to conclude otherwise in the absence of a jury find-
ing of separateness was not, on this record, a "tactical choice."
*Cf. State v. Pawlowski*, 221 Or App 227, 231, 190 P3d 387, *rev
den*, 345 Or 381 (2008) (declining "to deem it inferrable from
th[e] record that defendant knew he had a right to have a jury
find the facts supporting consecutive sentences and that he
* * * abandoned that right" where defendant's only argument
was that he be given concurrent sentences).

We next consider whether a remand for resentenc-
ing in this case would implicate "the interest of the judicial
system in avoiding unnecessary repetitive sentencing pro-
ceedings." *Fults*, 343 Or at 523. The state does not contend
that, on remand, the court could fashion the same composite
result in a different way. *Cf. State v. Jenniches*, 187 Or App
658, 664, 69 P3d 771, *rev den*, 335 Or 578 (2003) (declining to
exercise discretion to correct a sentencing error because it

---

[6] In his supplemental brief, defendant argues that any objection at sentencing
would have been futile because the sentencing court "was bound by this court's
opinion in *State v. Tanner*, 210 Or App 70, 150 P3d 31 (2006), *rev'd and rem'd*, 343
Or 554, 173 P3d 831 (2007)." Defendant is incorrect; he was sentenced on December
13, 2006, seven days before *Tanner* issued.

was "certain" that, on remand, the trial court would restructure the defendant's sentences so as to achieve the same sentence that it originally imposed). Indeed, the state makes no argument at all with respect to the consecutive sentence imposed on Count 10. The state's sole response to defendant's assignment of sentencing error is that Counts 4 and 7 occurred two weeks apart and thus "plainly d[id] not arise out of a continuous and uninterrupted course of conduct." Notwithstanding the correctness of the trial court's sentence on Counts 4 and 7, we cannot say that the court would be able to restructure defendant's sentence on Count 10 to achieve the same result on remand.

Further, as discussed above, there is a "legitimate debate" about the existence of the sentence enhancement fact that the court found here. Counts 7 and 10 were alleged to have occurred on the same day. Although the jury found defendant guilty of both charges, the jury's guilty verdicts do not demonstrate that it found that the two acts were not part of the same continuous and uninterrupted course of conduct or any other facts supporting consecutive sentences. Those questions of fact cannot be resolved on this record and, thus, we cannot say that it is certain defendant will receive the same sentence on remand.

Finally, the "gravity of the error," is significant in this case. *Ailes*, 312 Or at 382 n 6. By imposing a consecutive sentence on Count 10, the trial court increased defendant's term of incarceration by 13 months.

Remanded for resentencing; otherwise affirmed.