Submitted on remand from the Oregon Supreme Court October 29, 2008,
remanded for resentencing; otherwise affirmed April 8, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOSEPH LAVERN GALLINO,
*Defendant-Appellant.*

Lane County Circuit Court
200316607; A124009

206 P3d 204

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Joshua B. Crowther, Deputy Public Defender, Office of Public Defense Services, for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jeff J. Payne, Assistant Attorney General, for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Haselton, Judge.

BREWER, C. J.

## BREWER, C. J.

This case is before us on remand from the Supreme Court, which vacated our prior decision, *State v. Gallino*, 203 Or App 539, 124 P3d 1294 (2005) (*Gallino I*), in light of *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007), *adh'd to as modified on recons*, 344 Or 195, 179 P3d 673 (2008), and *State v. Fults*, 343 Or 515, 173 P3d 822 (2007). *State v. Gallino*, 345 Or 315, 195 P3d 62 (2008). In *Gallino I*, we vacated defendant's sentences and remanded for resentencing because the trial court had imposed a departure sentence based on judicial findings. That factfinding constituted plain error, and we exercised our discretion to correct it. The issue before us on remand is whether, in light of *Ramirez* and *Fults*, we properly exercised our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). We conclude that our exercise of discretion in *Gallino I* was proper. Accordingly, we again remand for resentencing.

Defendant was convicted of felony violation of a stalking protective order. The trial court imposed a durational departure sentence of 35 months' imprisonment and gave the following reasons for its decision to depart:

> "I find that there are the following separate and independent bases for departure sentence, each of which would support a departure sentence on its own merit. (1) [T]he Defendant was on multiple probations at the time of this offense. (2) There was persistent involvement in this type of criminal conduct, violating orders. (3) There were repeated victimizations of the same victim * * *. And I'll add the fourth, that I believe that that has traumatized her."

Because the trial court stated that the departure factors it identified were each independently adequate to support its decision to depart, we examine each in turn. On this record, we cannot say that the evidence supporting the first two departure factors—defendant's probation or supervision status at the time of the offense and his persistent involvement in similar offenses—was so "overwhelming" as to obviate all legitimate debate that the jury would have found those same departure factors. *See Ramirez*, 343 Or at 513 (setting out "legitimate debate" standard for exercise of discretion to review unpreserved challenges to departure sentences based

on judicial findings of fact). First, defendant had only one prior conviction for violating a stalking protective order. The trial court did observe that defendant's "record is terrible. He's obviously violated this Order or Orders on numerous other occasions." However, the court did not state, and the record does not reveal, any details concerning those other occasions. On this record, we cannot conclude that there is "no legitimate debate" as to whether the jury would find this factor.

Second, as we explained in *State v. Allen*, 198 Or App 392, 396, 108 P3d 651, *adh'd to as clarified on recons*, 202 Or App 565, 123 P3d 331 (2005), *rev den*, 342 Or 46 (2006), an upward departure sentence based on a defendant's supervisory status "requires further inferences about the malevolent quality of the offender and the failure of his [supervisory] status to serve as an effective deterrent" and, where the defendant did not admit those further facts, he "was entitled to have a jury determine whether those inferences were appropriate to draw by a standard of proof beyond a reasonable doubt." On this record, we cannot say that the evidence of defendant's "malevolent quality" was "overwhelming." A jury reasonably could have found that defendant's violation of the stalking protective order in this case while he was on probation for other, unrelated, offenses did not demonstrate "malevolence."

The final two departure factors that defendant engaged in, "repeated victimizations of the same victim" and acts that "traumatized" the victim, are similarly problematic. The fact that defendant repeatedly victimized the victim was already captured by the felony enhancement he received for the current violation of the stalking protective order. Factual aspects of a crime that constitute elements of the crime generally may not be used as aggravating factors as well, "unless the aspect is 'significantly different from the usual criminal conduct captured by the aspect of the crime.'" *State v. Guthrie*, 112 Or App 102, 106, 828 P2d 462 (1992) (quoting OAR 213-008-0002(2)).[1] In this case, defendant violated the

---

[1] OAR 213-008-0002(2) provides:

"If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the Crime Seriousness Scale, that aspect of the

stalking protective order by causing his niece to deliver a gift card to the victim, which was intended as a birthday gift for his son who was in the victim's custody, thus violating the order's prohibition on third-party contacts. Nothing in the record indicates that the conduct was "significantly different from the usual criminal conduct captured by the aspect of the crime."

Finally, our review of the record does not reveal "overwhelming" evidence of the victim's trauma. The victim did not testify to any trauma during the trial, and the officer who responded to her report of defendant's violation testified that she appeared "kind of annoyed, kind of upset." The victim gave the following statement at the sentencing hearing:

> "Well, I can't even look at him [defendant]. In the past two and half years since I left him, I have had my car stolen, my tires stabbed, I've had someone come in my home when me and my son and steal my purse. Everyday when I look at my son, I think of him. I have to explain to a 5-year old why he can't see his Dad. That's very hard.
>
> "* * * * *
>
> "[When defendant and the victim lived together] I'd get thrown out in the middle of the night. There was a time I had sleep in the hammock in the yard. I got woke up the next morning to, 'hey bitch, come in cook me dinner.' I couldn't take it anymore. I had to leave. He has not left me alone a day in the last two and half years. I just want this to be over. I want him to leave me alone. I want his family to leave me alone. I want my own life where I don't have to deal with him."

The victim did not testify at trial to any of the incidents that she recounted at sentencing and her recitation, although not trivial, does not overwhelmingly establish that defendant's actions "traumatized" her to a greater extent than is contemplated by the presumptive sentence for felony violation of a stalking protective order. *See State v. Rhoades,* 210 Or App 280, 284-85, 149 P3d 1259 (2006) ("In determining whether a

---

current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime."

factor constitutes a substantial and compelling reason for departure, we look at whether 'exceptional circumstances [exist that] overcome the presumption that the [presumptive] sentence accomplishes the purposes of the guidelines.' " (Brackets in *Rhoades*; quoting *State v. Parsons*, 135 Or App 188, 191, 897 P2d 1197, *rev den*, 322 Or 168 (1995).) Moreover, on this record, we cannot say that there is "no legitimate debate" that the jury would have found the victim to have been "traumatized" by defendant's act; a reasonable jury could have concluded from the victim's testimony and the testimony of the responding officer that her level of distress did not rise to the level of "trauma."

The question remains whether we will exercise our discretion to correct the error. We do so for two reasons: first, as discussed above, there is a legitimate debate whether the jury would have found the departure factors relied on by the trial court. Second, the gravity of the error in this case is substantial. *Ailes*, 312 Or at 382 n 6. Imposition of the durational departure sentence doubled defendant's term of incarceration from 18 to 36 months. Accordingly, we exercise our discretion to review the assigned error and remand for resentencing.

Remanded for resentencing; otherwise affirmed.