Argued and submitted December 10, 2013, affirmed June 11, petition for review denied October 2, 2014 (356 Or 397)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANON DEAN FERNAAYS,
aka Shannon Dean Fernaays,
*Defendant-Appellant.*

Marion County Circuit Court
11C44386; A150544

328 P3d 792

Bear Wilner-Nugent argued the cause and filed the brief for appellant.

Michael S. M. Shin, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Wollheim, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals from a judgment of conviction for robbery in the first degree, ORS 164.415, arguing, *inter alia*, that the trial court erred by imposing a departure sentence because defendant did not execute a written waiver of his right to have the alleged enhancement factors tried to a jury.[1] ORS 136.770; ORS 136.773; Or Const, Art I, § 11. As amplified below, (1) although the trial court's noncompliance with ORS 136.770 and ORS 136.773 constituted "plain error," we decline to exercise our discretion to remedy that statutory error; and (2) the trial court's purported noncompliance with Article I, section 11, of the Oregon Constitution was not plain error in that the applicability of that provision in these circumstances is "reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Accordingly, we affirm.

The material facts are procedural and undisputed. Defendant was charged with robbery in the first degree, ORS 164.415. Defendant subsequently waived counsel and, in the ensuing jury trial, represented himself, with a court-appointed attorney acting as his legal advisor. The state alleged that the following aggravating facts supported a departure sentence: (1) defendant was on supervision at the time of the robbery, (2) prior sanctions had failed to deter defendant from criminal activity, (3) defendant had demonstrated disregard for the laws and rules, and (4) incarceration is necessary for public safety. *See* OAR 213-008-0002 (providing a "nonexclusive list of mitigating and aggravating factors [that] may be considered in determining whether substantial and compelling reasons for a departure exist").

On the first day of trial, defendant addressed the court regarding the enhancement factors as follows: "Your Honor, as far as the *Blakely* factors, you can find the evidence for that. I don't need the jury to do it."[2] The trial court

---

[1] We reject defendant's other assignment of error, and other arguments related to the imposition of a departure sentence, without further published discussion.

[2] In *State v. Loftin*, 218 Or App 160, 166, 178 P3d 312 (2008), *adh'd to as modified on recons*, 228 Or App 96, 206 P3d 1208, *rev den*, 346 Or 364 (2009), we summarized the applicable law to which defendant referred:

responded that it would await the jury's verdict before reaching sentencing issues.

After the case was submitted to the jury, and during deliberation, defendant's legal advisor informed the trial court that, "[defendant], if he's found guilty, would waive the jury trying the *Blakely* factors, and have [the court] reach the decision." The court then asked defendant whether that was, in fact, what he wanted, and defendant responded, "I'm fine with that." The following colloquy ensued:

"THE COURT:   Okay. You understand you have a right to have a jury make a determination about—

"[DEFENDANT]:   Yeah, I understand my right, and I don't think it's necessary. You can do it.

"THE COURT:   You're going to give that up? Okay. I mean, I think all they've alleged is that you were on some form of supervision at the time of the crime, that prior sanctions have failed to deter your criminal activity, [that you have] demonstrated disregard for the laws and rules, and [that] incarceration is necessary for the safety of the public. Those are the only things that I would deal with. And you have a right for a jury to make a determination beyond a reasonable doubt on any one or all of those.

"[DEFENDANT]:   I'm okay with you doing it.

"THE COURT:   You [are] going to give those up?

"[DEFENDANT]:   Yep.

"THE COURT:   *Okay. Do we feel that has to be executed in writing?*

"[PROSECUTOR]:   *I would—I don't think so.* * * *

---

"[T]he [United States Supreme] Court in *Apprendi* [*v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000),] held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' * * * In *Blakely* [*v. Washington*, 542 US 296, 301, 124 S Ct 2531, 159 L Ed 2d 403 (2004)], the Court further held that that rule precluded judicial fact finding under a sentencing guidelines scheme in which the court may impose upward departure sentences based on findings of fact. 542 US at 301. In *State v. Dilts*, 337 Or 645, 103 P3d 95 (2004), the court held that *Blakely* precluded judicial factfinding in support of upward departure sentences under Oregon's sentencing guidelines."

"THE COURT: * * * Okay. And [defendant,] you've talked to [your legal advisor] about this?

"[DEFENDANT]: Yeah.

"THE COURT: I mean, I know we had the prior case that you were on probation for at the time [of the crime], so—

"[DEFENDANT]: I was on parole.

"THE COURT: And on parole, too, I guess. Yeah, I mean, I revoked your probation on the other matter, because he had 60 days using stuff.

"[PROSECUTOR]: I think that was an open case, Your Honor. He was on—the supervision, I believe, was just parole, wasn't it?

"[DEFENDANT]: It was post-prison, yeah.

"* * * * *

"THE COURT: The PCS was the open case * * * and he was on release status * * *."

(Emphases added.) After that exchange, the trial court accepted defendant's oral waiver. The jury subsequently returned a guilty verdict.

At sentencing, the court addressed defendant regarding aggravating factors:

"THE COURT: Okay. The state has the information to put forward that you were on parole at the time the offense was committed. Do you acknowledge that? Do you want to dispute that?

"[DEFENDANT]: (unintelligible).

"THE COURT: Okay. That could be used as an aggravating factor to seek an additional departure on the sentence. Do you understand that?

"[DEFENDANT]: I do.

"THE COURT: And I think that's what the state is going to be asking today. Have you done—you were on parole before, so you've been in the corrections division; is that correct?

"[DEFENDANT]: Yes.

"THE COURT: How much time have you actually done?

"[DEFENDANT]: Twelve years, sir."

The state then offered certified judgments of defendant's prior convictions for second-degree robbery, third-degree theft, first-degree forgery (two counts), second-degree forgery, identity theft (five counts), fraudulent use of a credit card, possession of a controlled substance, assaulting a public safety officer, and attempted escape. Defendant did not dispute any of those convictions. The state suggested the following sentence:

"Defendant is a 9B on the guidelines, which would be a presumptive 61 to 65 months in prison[, OAR 213-004-0007] or, as the court mentioned, this is a Ballot Measure 11 offense, which is a 90 month determinate sentence[, ORS 137.700(2)(a)(Q)].

"And, based on the *Blakely* factors submitted, I would request that the court depart from the 65 months to 114 months in prison, which is 24 months longer than the presumptive Ballot Measure 11 sentence, but less than the maximum of 130 that he could get for this based on his prior history.

"I think that would be appropriate. I think, based on his prior history, and having already done 70 months on another robbery, and then doing, in addition to many, many other crimes, and the time he has done on those, his willingness to go ahead and inflict the harm that he did on the victim in this case * * *.

"He attempted, as you heard, to draw other people into his criminal activities; has shown no rehabilitation or deterrent effect from the prior sentences. So I think it would be appropriate to give him more than the presumptive."

The trial court adopted the state's suggested sentence:

"What is frustrating from the public standpoint is that, once you were clean, it would have been nice for you to stay that way. You fell back into the same old patterns, because either you were comfortable with it, or you just didn't care about taking things from other people that didn't belong to you. I mean, that's—with all the thefts, and everything else that's associated in there, you have very little regard

for the property of another. You've compromised yourself in your liberties. * * * [Y]ou've made the community unsafe * * *. It's relatively brazen, you know, to commit a robbery.

"I have no choice other than the 90-month mandatory minimum. And then, *based on your history,* an additional two years would be appropriate under the circumstances. So, I'm going to adopt the recommendation of the state."

(Emphasis added.)

The court imposed a sentence of 114 months' imprisonment. Defendant appeals, assigning error to the trial court's failure to obtain a written waiver of his right to a jury trial on sentence enhancement facts. In particular, defendant contends that the court's error in that regard was both statutory and constitutional. Defendant's claim of statutory error is predicated principally on ORS 136.773(1), which provides as follows:

"When an enhancement fact relates to the defendant, the court shall submit the enhancement fact to the jury during the sentencing phase of the criminal proceeding if the defendant is found guilty of an offense to which the enhancement fact applies *unless the defendant makes a written waiver of the right to a jury trial on the enhancement fact* and:

"(a) Admits to the enhancement fact; or

"(b) Elects to have the enhancement fact tried to the court."

(Emphasis added.)[3] Defendant's claim of constitutional error is based on Article I, section 11, which provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, *such election to be in writing*[.]"

(Emphasis added.)

---

[3] Defendant also invokes ORS 136.770(1), which is almost identical to ORS 136.773(1), except that ORS 136.770(1) pertains and applies to enhancement facts "relate[d] to [the] offense charged." The differences between ORS 136.773(1) and ORS 136.770(1) are immaterial to our analysis that follows.

Defendant acknowledges that his present contentions of statutory and constitutional error are unpreserved. Nevertheless, invoking *State v. Barber*, 343 Or 525, 173 P3d 827 (2007), defendant contends that the asserted errors constitute "error[s] of law apparent on the record." ORAP 5.45(1).[4] Defendant further urges that, because "[t]he state has no legitimate interest in defendant serving an unlawful sentence," we should exercise our discretion to correct the asserted error by reversing and remanding for resentencing.

An unpreserved error is reviewable as "plain error" if (1) the error is one of law; (2) the legal point is obvious— that is, "not reasonably in dispute"; and (3) to reach the error, "[w]e need not go outside the record or choose between competing inferences to find it." *Brown*, 310 Or at 355. If we conclude that an asserted error is plain, we must then decide whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). In making that determination, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Id.* at 382 n 6.

For the reasons explained immediately below, we conclude that the trial court's noncompliance with ORS 136.770(1) and ORS 136.773(1) constituted "plain error"; nevertheless, we decline to exercise our discretion to remedy that statutory error. We further conclude that the purported constitutional error is not plain, because the applicability of Article I, section 11, in these circumstances is "reasonably in dispute" and not "obvious."

We begin with *Barber*. There, the defendant, who was convicted of burglary and theft after a stipulated facts

---

[4] ORAP 5.45(1) provides that "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief * * *, provided that the appellate court may consider an error of law apparent on the record."

trial, appealed, contending that the absence of a written waiver to a jury trial violated his rights under Article I, section 11.[5] 343 Or at 527. We agreed that the trial court plainly erred, but exercised our discretion not to correct the error, in part, because the "defendant's counsel proposed the stipulated facts trial and [the] defendant knowingly participated in that process," and "the failure to procure a written jury waiver of [the] defendant could easily have been remedied, had the matter been brought to the attention of the trial court." *State v. Barber*, 209 Or App 262, 267, 147 P3d 915 (2006), *rev'd*, 343 Or 525, 173 P3d 827 (2007).

The Supreme Court reversed, holding that an appellate court does not have discretion to not reach unpreserved error that involves a violation of the written waiver requirement of Article I, section 11. *Barber*, 343 Or at 529-30. The court reasoned:

> "The special peculiarity of Article I, section 11, does not lie in the fact that it describes a personal right. That is a characteristic that it shares with other constitutional provisions, such as Article I, section 8 (right of free expression), section 9 (right to be free from unreasonable searches and seizures), and section 12 (protection against double jeopardy), to name but a few. The distinction instead lies in the fact that Article I, section 11, not only recognizes a right but also specifies the only way in which that right may be lost, *viz.*, by a written waiver executed before trial commences, together with trial court consent.

> "Indeed, when one focuses on the right to a jury trial granted by Article I, section 11, its unique nature and the consequences that flow from that nature become apparent. The provision undoubtedly is worded as an individual right ('the accused person shall have the right to public trial by an impartial jury'). But the emphasized part of the phrase, 'any accused person * * * may elect to waive trial by jury and consent to be tried by the judge of the court alone, *such election to be in writing*,' demonstrates what it is that makes Article I, section 11, different: The provision itself prescribes the only way in which an accused person may

---

[5] The defendant in *Barber* challenged his *convictions* as violating Article I, section 11. He did not separately assert that his *sentence* also violated constitutional or statutory written waiver requirements. Thus, the analysis in *Barber* did not involve ORS 136.770 or ORS 136.773.

waive his or her right to a jury trial, and adherence to that method by the trial judge is itself a substantive constitutional right to which the accused is entitled.

"We think that the unique wording of the part of Article I, section 11, that we emphasize today and the unique kind of rights that that wording represents places errors committed with respect to it in a unique posture also: There is no waiver of a jury trial unless that waiver is in writing and, without a waiver, defendant should have been tried by a jury. The judge's error thus lay in going to trial *at all*. And, with respect to that kind of error under Article I, section 11, we cannot identify any way in which an appellate court may elect under ORAP 5.45(1) either to refuse to recognize the error or, having recognized it, refuse to correct it. Put in *Ailes/Fults* terms: There unquestionably is a 'strong polic[y] requiring preservation and raising of error.' [*State v.] Fults*, 343 Or [515, 522, 173 P3d 822 (2007)] (citing *Ailes*, 312 Or at 382). But that policy and the factors underlying it are court-created and general. **Here, those factors have to be weighed against a constitutional provision specifying the only way that the right that the provision separately grants may be waived.** So understood, there is no contest. The Court of Appeals' contrary conclusion that it had the discretion to ignore the absence of a written waiver was incorrect."

*Id.* (emphases in original; boldface added).

Thus—and of critical importance to our analysis that follows—*Barber*'s holding, which categorically precluded a "negative" exercise of *Ailes* discretion,[6] was explicitly and exclusively predicated on the constitutional character of the waiver provision of Article I, section 11. That holding, grounded in constitutional text and principle, does not purport to apply to the proper exercise of *Ailes* discretion with respect to the statutory written-waiver requirement of ORS 136.773(1) and ORS 136.770(1). *See also State v. Engerseth*, 255 Or App 765, 770 n 6, 299 P3d 567, *rev den*, 353 Or 868 (2013) (rejecting the defendant's contention that *Barber* applied to ORS 136.773).

---

[6] Or, perhaps more precisely, given that there is only one permissible outcome, there is no "discretion" at all. *See, e.g., State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining that the term "discretion" refers to a choice from "among several legally correct outcomes").

With that understanding, we turn first to the asserted statutory plain error. We agree with defendant that the asserted noncompliance with statutory requisites was plain error. As noted, ORS 136.773(1) explicitly requires the court to submit to the jury enhancement facts relating to the defendant "unless the defendant makes a *written* waiver of the right to a jury trial." (Emphasis added.) Here, it is undisputed that defendant made an *oral waiver* of the right to a jury trial on the alleged enhancement facts and never executed a written waiver.

Nevertheless, we decline to exercise our *Ailes* discretion to correct that statutory error for at least two compelling reasons. First, defendant repeatedly told the court that he wanted the court—and not the jury—to try the enhancement factors. 263 Or App at 409-16. Then, when the court asked whether defendant's oral waiver of the jury right needed to be memorialized in writing and the state responded that no written waiver was required, defendant and his legal advisor remained silent. Given those circumstances, a positive exercise of *Ailes* discretion would very substantially subvert "the policies behind the general rule requiring preservation of error." *Ailes*, 312 Or at 382 n 6; *cf. State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (holding that the defendant was precluded from seeking reversal on a specific error because, although the defendant did not "urge or advise" the trial court to commit the asserted error, he nevertheless was "actively instrumental" in causing that error because he did not oppose the erroneous action and, instead, indicated his willingness to accept the outcome of that action).

Second, given the evidence substantiating the alleged enhancement facts, *see* 263 Or App at 411 (the state provided certified copies of multiple prior convictions for robbery, theft, and forgery, and defendant admitted to the court that he had served 12 years for prior convictions and was on supervision at the time of the crime in this case), it is overwhelmingly likely that, in any resentencing process, the jury would find the facts alleged by the state, and the trial court, consequently, would impose the same sentence. Accordingly, any correction of the asserted statutory error would not materially promote the "ends of justice." *Ailes*,

312 Or at 382 n 6; *accord Fults*, 343 Or at 523 (identifying factors weighing against an exercise of *Ailes* discretion to correct sentencing error, including "the interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings"); *State v. Ramirez*, 343 Or 505, 513-14, 173 P3d 817 (2007), *modified on recons*, 344 Or 195, 179 P3d 673 (2008) (reasoning that, because the evidence on a sentencing factor was "overwhelming, it would not advance the ends of justice to remand for an unnecessary hearing").

We proceed to the asserted constitutional error. Defendant does not contend that Article I, section 11, entitled him to a jury trial on the alleged enhancement facts in this case; instead, defendant relies solely on the Sixth Amendment to the United States Constitution to assert a right to a jury trial on sentence enhancement facts, as prescribed in *Blakely v. Washington*, 542 US 296, 301, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000). However, defendant does not contend that the Sixth Amendment itself requires a written waiver. Rather, defendant reasons that: (1) the written-waiver requirement of Article I, section 11, applies to the determination of sentence enhancement facts under the Sixth Amendment; (2) under *Barber*, it was plain error to proceed without an executed jury waiver; and (3) under *Barber*'s categorical approach, the only legally permissible disposition is a remand for resentencing.

The state remonstrates, in part, that the requisites of plain error are not satisfied because, at the least, the asserted constitutional error is not "apparent" in that it is "reasonably in dispute." *Brown*, 310 Or at 355. Specifically, the state focuses on the first of defendant's premises and posits that Article I, section 11, is inapposite to these circumstances—or, at least, that its applicability, if any, is far from "obvious." We agree with the state.

The state contends that the right to a jury trial under Article I, section 11, attaches to a smaller category of sentence-enhancement factors than does the Sixth Amendment right to a jury trial—and that the Article I, section 11, written-waiver requirement applies only to those

enhancement facts for which a defendant is entitled to a jury trial under Article I, section 11. In support of that contention, the state cites two Oregon Supreme Court cases from the early 1980s (predating *Apprendi* and *Blakely*), where, in *dictum*, the Supreme Court announced a "simple principle that the facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing court." *State v. Quinn*, 290 Or 383, 405, 623 P2d 630 (1981), *overruled on other grounds by State v. Hall*, 339 Or 7, 115 P3d 908 (2005); *see also State v. Wedge*, 293 Or 598, 607, 652 P2d 773 (1982) (applying that principle from *Quinn*). *But see State v. Hess*, 342 Or 647, 659-60, 159 P3d 309 (2007) (observing that analysis in *Quinn* and *Wedge* was *dictum*).

In a more recent, post-*Apprendi*/*Blakely* decision, the Oregon Supreme Court summarized the Article I, section 11, right to a jury trial for sentencing facts:

> "*Hart*,[7] *Wedge*, and *Quinn* generally may be said to stand for the proposition that questions that arise under Article I, section 11, are to be resolved primarily in terms of whether the fact that authorizes an enhanced punishment is an 'element' of the crime for which the defendant is to be punished, regardless of how it has been denominated by the legislature. Inherent in that approach is the idea that *some* facts that may lead to enhanced punishment— for example, those that pertain to the defendant's character or status—are traditionally and properly for the sentencing court."

*State v. Ice*, 343 Or 248, 260, 170 P3d 1049 (2007), *rev'd on other grounds*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517, *modified on remand*, 346 Or 95, 204 P3d 1290 (2009) (emphasis in original).

From the foregoing, it is apparent that Article I, section 11, and the Sixth Amendment are hardly congruent with respect to entitlement to a jury trial on sentence enhancement facts and that the extent of their overlay,

---

[7] In *State v. Hart*, 299 Or 128, 137, 699 P2d 1113 (1985), the court held that Article I, section 11, did not entitle the defendant to a criminal jury trial on the issue of restitution. The court reasoned that, while the "monetary cost of the injury" is not related to the character or status of the defendant, neither is it "an element of the crime of assault." *Id.*

including in specific cases, is a matter of reasonable dispute. Further, defendant, the proponent of purported constitutional plain error, has offered no reasoned argument as to why, in this case, Article I, section 11, applies concurrently with the Sixth Amendment with respect to the determination of the predicate sentence enhancement facts. Given those circumstances, the applicability of Article I, section 11's written-waiver requirement—and the consequent asserted error—is not "apparent on the record."

Affirmed.